[No. G044970. Fourth Dist., Div. Three. June 21, 2012.]

NETJETS AVIATION, INC., et al., Plaintiffs and Respondents, v. WEBSTER J. GUILLORY, as County Assessor, etc., Defendant and Appellant.
FLIGHT OPTIONS, LLC, Plaintiff and Respondent, v. WEBSTER J. GUILLORY, as County Assessor, etc., Defendant and Appellant.

[No. G044980. Fourth Dist., Div. Three. June 21, 2012.]

CITATIONSHARES MANAGEMENT, LLC, Plaintiff and Respondent, v. JOSEPH E. HOLLAND, as County Assessor, etc., Defendant and Appellant.
BOMBARDIER AEROSPACE CORPORATION, Plaintiff and Respondent, v.
JOSEPH E. HOLLAND, as County Assessor, etc., Defendant and Appellant.

28

**COUNSEL**

Nicholas S. Chrisos, County Counsel, James C. Harman and Aurelio Torre, Deputy County Counsel, for Defendant and Appellant Webster J. Guillory.

Dennis A. Marshall, County Counsel, and Marie A. LaSala, Deputy County Counsel, for Defendant and Appellant Joseph E. Holland.

John F. Krattli, Acting County Counsel (Los Angeles), and Albert Ramseyer, Deputy County Counsel, for the California Assessors' Association and California State Association of Counties as Amici Curiae on behalf of Defendants and Appellants.

Randy Ferris, Robert W. Lambert and Kiren Kaur Chohan for the California State Board of Equalization as Amicus Curiae on behalf of Defendants and Appellants.

O'Melveny & Myers, Robert M. Swerdlow, Adam L. Bloom, Jonathan D. Hacker, Scott M. Edson; Loeb & Loeb and Christopher W. Campbell for Plaintiffs and Respondents NetJets Aviation, Inc., NetJets International, Inc., and NetJets Large Aircraft, Inc.

Ajalat, Polley, Ayoob & Matarese, Richard J. Ayoob, Terry L. Polley, Christopher J. Matarese and Gregory R. Broege for Plaintiff and Respondent Flight Options, LLC.

Cahill, Davis & O'Neall, John D. Cahill, Cris K. O'Neall and Andrew W. Bodeau for Plaintiff and Respondent CitationShares Management, LLC.

Bewley, Lassleben & Miller, Jeffrey S. Baird and Joseph A. Vinatieri for Plaintiff and Respondent Bombardier Aerospace Corporation.

Wm. Gregory Turner for the Council on State Taxation as Amicus Curiae on behalf of Plaintiffs and Respondents.

OPINION

FYBEL, J.—

INTRODUCTION

Respondents sell fractional interests in private jets, and manage those jets for the fractional owners. In 2007, the California Legislature enacted new legislation to assess a personal property tax against the managers of fractionally owned aircraft. The legislation added sections 1160, 1161, 1162, and 5368 to the Revenue and Taxation Code, and amended Revenue and Taxation Code sections 441 and 452 (the Legislation). (All further statutory references are to the Revenue and Taxation Code, unless otherwise specified.) Respondents challenged the Legislation, and the trial court concluded it was unconstitutional or otherwise unlawful.

We hold the tax on the fractionally owned aircraft assessed by the Legislation is constitutional and lawful, as against the substantive challenges raised by respondents. We agree with the trial court's ruling, however, that the new assessment cannot be applied retroactively. Accordingly, we hold retroactive application of the new tax assessment is unconstitutional.

We reverse and direct the trial court to enter judgments providing that the retroactivity provisions of the Legislation are unconstitutional, but that the Legislation is lawful and constitutional in all other respects challenged by respondents.

STATEMENT OF FACTS

I.

BACKGROUND FACTS

NetJets Aviation, Inc., NetJets International, Inc., and NetJets Large Aircraft, Inc. (collectively, NetJets), are Delaware corporations, with their principal

places of business in Ohio, South Carolina, and Connecticut, respectively. Flight Options, LLC (Flights Options), is a Delaware limited liability company, with its principal place of business in Ohio. CitationShares Management, LLC (CitationShares), is a limited liability company organized under the laws of Delaware, with its principal place of business in Connecticut. Bombardier Aerospace Corporation (Bombardier) is a Texas corporation, with its principal place of business in Texas.[1]

In November 2003, the Federal Aviation Administration (FAA) enacted regulations pertaining to fractional ownership of aircraft and program management services for such fractionally owned aircraft. (14 C.F.R. § 91.1001 et seq. (2012).) Fractional owners purchase fractional interests in a specific aircraft, and are allotted a specified number of hours of access to the aircraft, depending on the size of their ownership interests.

A fractional owner enters into a number of operating agreements regarding the ownership interest: (1) a purchase agreement, by which the owner acquires an undivided share in one aircraft, agrees not to transfer its interest without the respective Respondent's consent, agrees to use the aircraft exclusively in the fractional ownership program, transfers possession of the aircraft back to Respondent, and grants Respondent the right to sell additional fractional interests in the aircraft and the right to repurchase the fractional interests under specific conditions; (2) a management agreement, by which the fractional owner gives Respondent the exclusive right to manage the aircraft, and agrees to pay a monthly management fee and an hourly fee for the time the aircraft is used, and by which Respondent agrees to staff, provide pilots for, and maintain the aircraft, and retains the right to use the aircraft when not being used by a fractional owner; (3) an owner's agreement, by which each fractional owner agrees that the aircraft will be used exclusively in the fractional ownership program; and (4) a master interchange agreement or dry lease exchange agreement,[2] by which all fractional owners agree that

---

[1] In its brief, and again in a separate motion entitled "Motion of Respondent Bombardier Aerospace Corporation for Separate Consideration in Consolidated Appeals" (which we deemed to be a motion for leave to file a supplemental respondent's brief, and therefore denied), Bombardier asked this court to separately consider its case against appellant Joseph E. Holland. In reaching our conclusions, we have given separate consideration to the facts applicable to each appellant and each respondent. To make the opinion more comprehensible, we will refer to NetJets, Flight Options, Bombardier, and CitationShares, collectively, as Respondents, and describe their businesses, and the effect of Senate Bill No. 87 (2007–2008 Reg. Sess.) (Senate Bill No. 87) on their businesses, collectively. In doing so, we have given fair and full consideration to all parties. We have carefully considered the briefs filed by the parties and by amici curiae, and the voluminous record supporting all parties' arguments.

[2] "A 'dry lease' is a lease of the aircraft without the flight crew, while a 'wet lease' is a lease of the aircraft with a flight crew." (Crowther, *Taxation of Fractional Programs: "Flying Over Uncharted Waters"* (2002) 67 J. Air L. & Com. 241, 245; see U.S. Dept. of Transportation,

they will participate in the fractional ownership program under the relevant operating agreements, and that the aircraft for which the owner is on title will be used in the program.

Respondents are managers for fractionally owned aircraft in their respective fleets. Respondents make fractional shares of aircraft available for purchase. They also provide central management of the aircraft including furnishing pilots, obtaining insurance, maintaining the aircraft, and administering a reciprocal leasing arrangement by which fractional owners may use another aircraft if the aircraft in which they own a fractional share is unavailable.

Each of the Respondents also offers access to the aircraft to nonfractional owners. (Bombardier does not operate its own program, but leases unused fractional shares to an independent charter air carrier.) The same aircraft that make up the fractional ownership program are used for these programs.

II.

*THE LEGISLATION*

In California, general aviation aircraft are taxed as personal property in the county in which they are hangared. (Cal. Code Regs., tit. 18, § 204; 1 Ehrman & Flavin, Taxing Cal. Property (4th ed. 2011) 7:6, pp. 7-7 to 7-8; Bd. of Equalization, Assessors' Handbook (Oct. 2002) § 504, Assessment of Personal Property and Fixtures, p. 36 <http:// www.boe.ca.gov/proptaxes/pdf/ah504.pdf> [as of June 21, 2012].) Commercial aircraft are taxed based on an allocation formula that considers the time the aircraft spends in California (whether on the ground or in flight) and the number of arrivals and departures the aircraft makes within California. Both of those factors are then compared proportionally to the overall time and the overall number of arrivals and departures during the time period. (§ 1150 et seq.; Cal. Code Regs., tit. 18, § 202; 1 Ehrman & Flavin, Taxing Cal. Property, *supra*, 7:7, pp. 7-8 to 7-10; Bd. of Equalization, Assessors' Handbook, *supra*, § 504, pp. 40–41.) Because of the hybrid nature of fractionally owned aircraft, before 2007 they had not been taxed by any taxing authority in California, despite the constitutional and statutory requirement that all nonexempt property be taxed. (Cal. Const., art. XIII, § 1; § 405, subd. (a).)

In April 2006, the Los Angeles County Assessor inquired of the Board of Equalization (the Board) whether fractionally owned aircraft were subject to

FAA, Truth in Leasing, Advisory Circular No. 91-37A, Jan. 16, 1978, ¶ 5 <http://www.faa.gov/documentLibrary/media/Advisory_Circular/ AC%2091-37A.pdf> [as of June 21, 2012].)

property taxation in California. The Board responded the aircraft could be taxable in California, but did not determine whether any individual aircraft had acquired a taxable situs in California. The Board also determined that Respondents could be taxed directly if they maintained possession and control over the aircraft.

In 2007, the California Legislature proposed Senate Bill No. 87 to capture tax revenue on fractionally owned aircraft. "The Legislature finds and declares the following: [¶] (a) A substantial portion of business aviation aircraft is now owned and operated under fractional ownership programs. [¶] (b) Aircraft in fractional ownership programs have a significant presence in California. [¶] (c) The size of some fractional ownership program fleets is quite large and the mix of ownership interests and unscheduled usage imposes a significant burden on both taxpayers and county assessors to assess and tax these fleets on an aircraft-by-aircraft basis; in order to reduce this burden, a simplified assessment approach is warranted. [¶] (d) Section 1 of Article XIII of the California Constitution specifies that all nonexempt property is taxable. Therefore, fractionally owned aircraft are constitutionally required to be assessed. [¶] (e) The purpose of Sections 2 and 4 of this act is to establish a simplified procedure for assessing fractionally owned aircraft that is appropriate and fair, that allocates assessed value among counties in a reasonable manner, and that reduces the administrative burden on taxpayers and county assessors." (Stats. 2007, ch. 180, § 1, p. 2272.)

Senate Bill No. 87, which was enacted as the Legislation, amended and added certain sections of the Revenue and Taxation Code. Of particular importance is the addition of sections 1160 and 1161, which creates a means for calculating the tax due on fractionally owned aircraft, using an allocation system. Section 1160 sets out the definitions applicable to the Legislation: "For purposes of this article, all of the following apply: [¶] (a) The following terms have the following meanings: [¶] (1) 'Aircraft' has the same meaning as specified in Section 5303. [¶] (2) 'Fleet' means all aircraft operated by a manager of a fractional ownership program. [¶] (3) 'Fleet type' means aircraft classified by make, model, and series operated by a manager of a fractional ownership program. [¶] (4) 'Fractionally owned aircraft' or 'aircraft operated in fractional ownership programs' means those aircraft registered with the Federal Aviation Administration as fractionally owned aircraft. [¶] (5) 'Landing' means physical contact involving the embarking or disembarking of

crew, passengers, or freight, and that physical contact did not arise unintentionally as the result of an emergency. [¶] (b) Revenues derived from the taxation of fractionally owned aircraft under this article shall be distributed in accordance with Chapter 6 (commencing with Section 5451) of Part 10 of this division. [¶] (c) Fractionally owned aircraft shall be assessed under this article only if a lead county assessor accepts a designation as lead county assessor under Section 1162."

Section 1161 specifies the entities that may be assessed the tax on fractionally owned aircraft, and the assessment period: "(a) Notwithstanding any other law, *fractionally owned aircraft that has situs in this state shall be assessed on a fleetwide basis to the manager in control of the fleet* and a notice of that assessment shall be issued to that manager. [¶] (1) Any fractionally owned aircraft that has been annually assessed for the fiscal years preceding the 2007–08 fiscal year shall be assessed under this article commencing with the 2007–08 fiscal year. [¶] (2) For fractionally owned aircraft that have not been annually assessed for the fiscal years preceding the 2007–08 fiscal year, assessment under this article applies for the 2007–08 fiscal year and for each fiscal year thereafter, and for preceding fiscal years for which an assessment was not made, and for which a statute of limitations either does not apply or has been waived. [¶] (b) A fleet of fractionally owned aircraft establishes situs in this state if an aircraft within the fleet makes a landing in the state. [¶] (c) A fleet of fractionally owned aircraft shall be assessed on an allocated basis. An allocation factor shall be established in each county for each fleet type of fractionally owned aircraft for which situs in this state has been established as described in subdivision (b). *This allocation factor is a fraction, the numerator of which is the total number of landings and departures made by the fleet type in the county during the previous calendar year and the denominator of which is the total number of landings and departures made by the fleet type worldwide during the previous calendar year.*" (Italics added.)

The Legislative Counsel's Digest of Senate Bill No. 87 describes the purpose of the Legislation as follows: "Existing property tax law requires that aircraft, other than certificated aircraft, be valued and assessed only in the county in which it is habitually situated. Existing property tax law requires owners, as well as operators, of private and public airports, to provide the assessor of the county in which the airport is situated, with specified information regarding aircraft using the airport as a base, to be used by the assessor in the assessment of aircraft at market value. [¶] This bill would instead provide a formula, based upon the number of landings in and departures from a county in proportion to landings and departures worldwide, to assess a fleet of fractionally owned aircraft, as defined, that would be taxed by the counties where the fleet lands. This bill would require that the fleet be assessed to the manager in control of the fleet, as specified. This bill would

specify that this fleetwide assessment applies for the 2007–08 fiscal year and each fiscal year thereafter, and also to specified prior fiscal years. . . . [¶] . . . [¶] This bill would declare that it is to take effect immediately as an urgency statute." (Legis. Counsel's Dig., Sen. Bill No. 87, 5 Stats. 2007, Summary Dig., pp. 83–84.)

## III.

### PROCEDURAL HISTORY

After the enactment of the Legislation, local tax assessors began assessing Respondents as managers "in control of the fleet[s]" (§ 1161, subd. (a)), not as representatives of the fractional owners. The assessments extended back to January 1, 2002.

NetJets and Flight Options filed separate lawsuits in Orange County Superior Court, against Webster J. Guillory, in his capacity as the Orange County Tax Assessor, challenging the legality and constitutionality of the Legislation and the assessments made thereunder. Bombardier and CitationShares filed similar lawsuits in Santa Barbara County Superior Court, against Joseph E. Holland, in his capacity as the Santa Barbara County Tax Assessor. The Santa Barbara cases were transferred to Orange County Superior Court, and the four cases were consolidated for purposes of trial. Guillory and Holland will be referred to in this opinion as the Assessors.

Each of the Respondents filed a dispositive motion for declaratory relief. The parties presented their cases by means of written briefs and declarations; no live witness testimony was offered. Following oral argument, the trial court issued a minute order reading, in relevant part, as follows:

"First, [Respondents] argue that assessments and collections for the [period] before 1/1/07 are unconstitutionally retroactive.

"Applicable law.

"The U.S. Supreme Court has explained that a 'wholly new' tax may not be imposed retroactively. [Citations.] For purposes of substantive Due Process, the court must ask whether such taxes are 'harsh and oppressive' [citation]. Both Federal and California courts seem to agree, however, that taxes may be imposed retroactively during the preceding year (i.e., the year of the legislative session in which it was enacted, or the current tax year). [Citations.] Longer periods of retroactivity are regarded with suspicion. [Citation.]

"It seems undisputed that [Respondents] have been assessed for taxes, supposedly owed under SB 87, going all the way back to 1/1/02. . . .

"SB 87 appears to be a 'wholly new' tax, rather than a mere clarification of existing tax law.

"[The Assessors] argue that SB 87 did not impose a 'wholly new' tax, but merely 'clarified' existing law regarding aircraft taxation.

"The legislative history of SB 87 suggests that it is far more than a mere clarification of existing tax law. [Citation.] The State Board of Equalization, in their internal correspondence, likewise seems to have regarded SB 87 as entirely new law . . . .

"SB 87 imposes a 'harsh' and 'oppressive' burden on [Respondents] in violation of Due Process.

"[The Assessors] argue that even if SB 87 is a retroactive tax, it is still not 'harsh' or 'oppressive' enough to violate Due Process. [Citation.] The Supreme Court, they note, has upheld retroactive taxation where (1) the legislative purpose is neither illegitimate nor arbitrary; and (2) the legislative body acts promptly and establishes only a modest period of retroactivity. [Citation.]

"[Respondents] argue that SB 87's five-year retroactivity period is not modest, in that it would force aircraft managers to spend a great deal of time and effort hunting for documentation relating to fractionally-owned aircraft going all the way back to 2002; and that their contractual arrangements with their former customers may prevent them from collecting the retroactive tax from such customers. . . . A burden of this kind indicates that the period of retroactivity is not 'modest.' [Citation.]

"Second, [Respondents] argue that SB 87 unlawfully assesses the tax against the aircraft managers, who have neither ownership nor control nor possession of the fractionally-owned aircraft. . . .

"California Revenue & Taxation Code Section 405(a) mandates that tax assessors '. . . assess all the taxable property in his county, except state-assessed property, to the persons *owning, claiming, possessing, or controlling*

it on the [tax] lien date'. Revenue & Taxation Code Section 611 similarly provides that '[i]f the name of an absent owner is known to the assessor . . . the property shall be assessed to such *owner* . . .'.

"[Respondents] seem to be neither the true owners, possessors, or controllers of the fractionally-owned aircraft.

"[The Assessors] argue that [Respondents] are, if not the true owners, at least the true possessors and controllers of the fractionally-owned aircraft. [The Assessors] maintain that [Respondents] have sufficient control over the fractionally-owned aircraft to fall within the scope of Section 405(a). They note that the term 'owner' has no precise definition; that the whole question of who is the 'owner' of particular property is relative; and that the answer depends on the precise nature of the property in question. [Citation.] [The Assessors] also note that vesting title of property in a customer's name does not, by itself, mean that the company that ultimately controls the use of that property cannot be assessed. [Citation.]

"[The Assessors] argue that [Respondents], the managers of the aircraft fleets, essentially control the way that the jets can and cannot be used.

"The controls exercised by [the Assessors], however, seem small compared to the far greater control exercised by the fractional-aircraft owners themselves.

"[Respondents] offer evidence that they have very little control over the aircraft in their programs; and that ownership, as well as authority over most decisions involving the use of the aircraft, rest with their customers. [¶] . . . [¶]

"The Parties asked for [a] Statement of Decision. This is the Court's Final Ruling.

"[Respondents] have advanced two valid arguments why SB 87's tax assessed on managers of fractionally-owned aircraft is unconstitutional and/or unlawful. First, it is unconstitutionally retroactive. Second, it is unlawfully imposed on managers who neither own, control, nor possess the aircraft in question.

"All motions are granted. [Respondents] have shown that the tax imposed on managers of fractionally-owned aircraft by SB 87 [(Rev. & Tax. Code, § 1160 et seq.)] is unconstitutional and/or unlawful for the above reasons." (Underscoring & boldface omitted.)

The trial court entered separate judgments in each of the four consolidated cases. "[T]he Court hereby adjudges, declares, and decrees that any property

taxes assessed or collected (or to be so assessed or collected) under the provisions of Senate Bill 87 (Revenue and Taxation Code §§ 1160, 1161, and 1162, enacted August 24, 2007) were and are unconstitutional, or otherwise legally invalid. Without limitation on the foregoing, the Court declares pursuant to § 4808 that any taxes assessed, levied, or collected (or to be assessed, levied, or collected) under Senate Bill 87, are both (a) unconstitutional in their retroactive application and (b) otherwise unlawful and illegal in their imposition upon the petitioner aircraft managers . . . who neither own, control, nor possess the aircraft in question."

The Assessors filed timely appeals from the judgments entered against them. We consolidated the Assessors' appeals for purposes of briefing, oral argument, and decision, based on a joint motion to consolidate.

DISCUSSION

I.

STANDARDS OF REVIEW

We review the trial court's factual findings for substantial evidence, and its interpretation of the law de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Benninghoff v. Superior Court* (2006) 136 Cal.App.4th 61, 66 [38 Cal.Rptr.3d 759].)

II.

WAS IT LAWFUL TO ASSESS RESPONDENTS?

■ The trial court found that taxes on fractionally owned aircraft fleets could not be assessed against Respondents, the managers of those fleets. We conclude insufficient evidence supports the court's finding. In reviewing the legal issues de novo, we hold the Legislation lawfully assesses a tax on the fractionally owned aircraft against Respondents. For the reasons we shall explain, *post*, the tax may be assessed against Respondents because they control the fractionally owned aircraft.

■ We begin our analysis with a survey of California law regarding the Legislature's right to determine what parties and what property may be taxed, subject to the limits imposed by the state and federal Constitutions. As our Supreme Court has explained: "Generally the Legislature is supreme in the field of taxation, and the provisions on taxation in the state Constitution are a limitation on the power of the Legislature rather than a grant to it. [Citations.]

Its power in the field of taxation is limited only by constitutional restrictions. [Citations.] Those principles are a part of the broader concept that '. . . Our Constitution is not a grant of power but rather a limitation or restriction upon the powers of the Legislature. . . .' [Citation.] As a result constitutional restrictions on the power of the Legislature must be strictly construed against the limitation. [Citations.] . . . [¶] 'If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations are to be construed strictly, and are not to be extended to include matters not covered by the language used.' " (*Delaney v. Lowery* (1944) 25 Cal.2d 561, 568–569 [154 P.2d 674].)

"Every system of taxation consists of two parts: (1) the elements which enter into the imposition of the tax, and (2) the steps taken for its assessment and collection. The former is a legislative function; the latter is mere machinery, and is delegable to other than governmental agencies. [Citation.] The legislative powers include the selection of the property to be taxed, the determination of the basis for the measurement of the tax, and the definition of the purpose for which the tax shall be levied. [Citation.] On the other hand, powers which are not legislative include the power to value property for taxation pursuant to fixed rules, the power to extend, assess, and collect the taxes, and the power to perform any of the innumerable details of computation, appraisement, and adjustment. [Citation.]" (*Gadd v. McGuire* (1924) 69 Cal.App. 347, 364–365 [231 P. 754].)

██ The Legislation provides that taxes on fractionally owned aircraft shall be assessed to the manager in control of the fleet of those aircraft. (§ 1161, subd. (a).) The Legislature was authorized to assess the tax against the managers in control of the fractionally owned aircraft fleets by section 405, subdivision (a), which requires each county assessor to "assess all the taxable property in his county, except state-assessed property, to the persons owning, claiming, possessing, *or controlling* it on the lien date." (Italics added.)[3] As we discuss, consistent authority from across our country supports imposition of the tax on Respondents as managers in control of the aircraft fleets.

---

[3] NetJets argued in its appellate brief and at oral argument that the prospective imposition of the tax on the managers of the fractionally owned aircraft was unconstitutional. The trial court did not address this issue as a constitutional one, nor did the other Respondents. The argument on this point in NetJet's brief, though labeled as "constitutional," is written only as an argument that the prospective imposition of the tax on the managers is unlawful under statutory and case law. (NetJets's constitutional arguments regarding situs and retroactivity are addressed, *post*.)

## A.

### Tax Assessment Against Managers in Control of Fleets of Fractionally Owned Aircraft

In *Flight Options, LLC v. Department of Revenue* (2011) 172 Wn.2d 487, 505 [259 P.3d 234, 243] (*Flight Options*), the Washington Supreme Court recently held that an apportioned property tax could be assessed against Flight Options—one of the Respondents in this case—as the manager of a fleet of fractionally owned aircraft, while "assum[ing], without deciding, that Flight Options does not own the airplanes in its fleet" (*id.*, 259 P.3d at p. 242).[4]

In *Executive Jet Aviation, Inc. v. U.S.* (Fed.Cir. 1997) 125 F.3d 1463, the then operator of the NetJets fractional ownership program sought a refund of federal taxes, on the ground it was merely the manager of the aircraft, not a business providing transportation for hire. In affirming the dismissal of the taxpayer's claim, the federal circuit court of appeals held: " 'It has been recognized that for tax purposes the substance rather than the form of a transaction is generally controlling.' [Citations.] While it is true that [the fractional owner] held legal title in [the aircraft bearing FAA registration number] N111QS to the extent of its fifty percent ownership interest, the agreements which framed the NetJets program placed extensive limitations on the exercise of that interest. At the same time, [the taxpayer] coordinated all

---

[4] Other states have taxed fractionally owned aircraft differently, but still imposed a tax on some party to the transaction. In no case cited to us has any court concluded that the fractional nature of the aircraft's ownership or the aircraft's multiple arrivals and departures in different states, not on a fixed schedule, insulate the fractionally owned aircraft from taxation. In *Fall Creek Construction Co., Inc. v. Director of Revenue* (Mo. 2003) 109 S.W.3d 165, the Missouri Supreme Court affirmed a use tax imposed on a fractional aircraft owner. The supreme court rejected the four arguments made by the fractional owner: (1) the fractional owner did not purchase any tangible personal property, but instead purchased the right to use an aircraft through the interchange program for a specific number of hours per year (*id.* at pp. 169–170); (2) the imposition of a use tax on fractional ownership interests impermissibly burdens interstate commerce (*id.* at pp. 170–171); (3) the manager of the fractionally owned aircraft fleet maintained control over the aircraft, so the fractional owner did not have sufficient dominion or control to constitute storage or use (*id.* at pp. 171–172); and (4) the aircraft never " 'finally c[a]me to rest' " in Missouri (*id.* at pp. 172–174).

In *Fisher & Co., Inc. v. Department of Treasury* (2009) 282 Mich.App. 207 [769 N.W.2d 740], the Michigan Court of Appeals affirmed the decision of the court of claims that the fractional owner of an aircraft was liable for a use tax under Michigan law. "The transaction involved was, therefore, a purchase of tangible personal property coupled with a contract controlling how that personal property would be used. The fact that plaintiff has contracted away some (or even most) of its practical control over its airplane does not preclude plaintiff from having purchased it. It is therefore clear that there was a transfer of tangible personal property and a contemporaneous but nevertheless separate contract for services involving that property." (*Id.*, 769 N.W.2d at p. 743.)

of N111QS' flights with the needs of the other participants in the interchange program and reserved for itself exclusive use of the aircraft for its charter service and for training pilots when the aircraft was not being used by one of its owners. [The fractional owner]'s highly circumscribed ownership interest in N111QS simply was the vehicle through which [the fractional owner] entered into, and was allowed to participate in, an arrangement pursuant to which it obtained from [the taxpayer] transportation from one airport to another. We hold that, through its NetJets program, [the taxpayer] was in the 'business of transporting persons or property for hire by air.' " (*Id.* at p. 1469.) *Executive Jet Aviation, Inc. v. U.S.* is not directly on point, as it addresses whether flights by fractional owners are subject to federal tax as commercial or noncommercial aviation. We find the case's analysis of the fractionally owned aircraft fleet manager, however, to be illuminating to our consideration of whether Respondents control the fractionally owned aircraft.

In 1992, the IRS issued a private letter ruling, addressing whether the manager of a fractionally owned aircraft fleet could be assessed a transportation tax.[5] (The ruling did not address state property taxes.) The IRS concluded that the fleet manager was liable for the transportation tax because of its control over the aircraft: "In viewing the totality of the circumstances, including the agreements and the respective responsibilities of the parties, although the owners are the title holders to the aircraft, they have relinquished possession, command, and control, of their respective aircraft to the taxpayer [the fleet manager]. who provides air transportation. The owners are obligated upon the purchase of an interest in an aircraft to sign agreements that effectively allow the taxpayer to treat the A program aircraft as part of its charter fleet. The taxpayer supplies and has command over the pilots and, even though the owners may designate which pilots they prefer, the taxpayer has ultimate control over assignment of crews. The taxpayer is responsible for operations, maintenance, and insurance expenses, and, depending on the nonavailability of the aircraft, provides transportation to an owner in any aircraft in the A program or within the taxpayer's charter operation—thus in many instances transporting an owner in an aircraft in which it does not even have an ownership interest. Under the owners['] agreement, an owner generally cannot utilize an A program aircraft to transport passengers or cargo for compensation or hire. Therefore, the taxpayer is providing taxable air transportation of persons under section 4261(a) of the Code." (I.R.S. Priv. Ltr. Rul. 93-14-002 (Dec. 22, 1992) pp. 15–16.)

The only contrary opinion was expressed in a 2002 law review article which addressed issues of state personal property taxation of fractionally

---

[5] A private letter ruling may not be used or cited as precedent (26 U.S.C. § 6110(k)(3)), but a court "may . . . deem[] it instructive" (*Shaev v. Saper* (3d Cir. 2003) 320 F.3d 373, 381, fn. 5).

owned aircraft. The author concluded managers of the aircraft could not be taxed because, "[g]enerally, for property and registration tax purposes, the only thing that matters is who owns the aircraft. While the State tax authorities might want to argue that either the selling company or the management company is the owner of all of the aircraft, there does not appear to be a good basis for reaching this conclusion. Presumably, the interest owners will be considered the joint owners of each aircraft." (Crowther, *Taxation of Fractional Programs: "Flying Over Uncharted Waters," supra*, 67 J. Air L. & Com. at p. 318.) The article does not address statutes such as section 1161, subdivision (a), which imposes the tax against the manager in control of the fractionally owned aircraft fleet, or section 405, which permits California to assess personal property taxes against not only the owner, but also the party in possession or control of the personal property.

Based on our legal analysis and the record, we hold insufficient evidence supports the trial court's finding that Respondents do not control the fleets of fractionally owned aircraft for the following reasons. The fractional owners cannot transfer their interests in the aircraft without Respondents' consent (although that consent cannot be unreasonably withheld). The fractional owners may not use the aircraft other than within the fractional ownership program. Respondents retain the right to sell additional shares of the fractionally owned aircraft, and retain possession of the aircraft except when a fractional owner is using the aircraft. Respondents have the right to repurchase the fractional ownership interests after five years, or if the fractional owner materially breaches any of the operative agreements. Respondents maintain the aircraft, obtain insurance for the aircraft, and provide staff and piloting services for the aircraft (unless a fractional owner chooses to provide its own pilot, who must be approved by Respondents). Respondents handle scheduling of the aircrafts' use. The fractional owners pay Respondents a monthly maintenance fee, as well as an hourly fee when they are actually using the aircraft. When any aircraft is not being used by one of the fractional owners, Respondents retain the right to use the aircraft for their own purposes. These purposes may include use of the aircraft to train pilots or for marketing their fractional use programs. Respondents may also lease the aircraft directly to nonfractional owners or to third parties who in turn sell their aircraft time to nonfractional owners; in either event, Respondents are making money on the aircraft which is not shared with the fractional owners. The fractional owners are never guaranteed that when they use their fractional interest, it will be the aircraft in which they actually own a share. Respondents retain the right to transfer a fractional owner's interest in one aircraft to another aircraft of equal or greater value.

## B.

### Ownership

■ Respondents argue they cannot be taxed under the Legislation because they do not "own" the fractionally owned aircraft. Respondents are not the title owners of the fractionally owned aircraft fleets.[6] As noted, *ante*, section 1161, subdivision (a) specifically assesses taxes against the manager in control of a fractionally owned fleet of aircraft, not the fractional owners. Such assessment is permissible under section 405, subdivision (a), which does not limit the tax assessment to the owner of title to the property. (See *Cox Cable San Diego, Inc. v. County of San Diego* (1986) 185 Cal.App.3d 368, 380 [229 Cal.Rptr. 839]; *Los Angeles Dodgers, Inc. v. County of Los Angeles* (1967) 256 Cal.App.2d 918, 924–925 [64 Cal.Rptr. 465]; *RCA Photophone Inc. v. Huffman* (1935) 5 Cal.App.2d 401, 406–407 [42 P.2d 1059].)

"The terms 'owner' and 'owned' may be so defined as to include a person possessing such interest in property that he has lawful possession of it. [Citation.] [¶] Plaintiffs concede that they have possessory interests in the property, that they occupy it, and that such interests are taxable. The assessment to them was a sufficient compliance with the requirement of the code provision that the property be assessed 'to the persons owning, claiming, possessing, or controlling it.' The assessor, having found persons occupying and in possession of the property, was authorized to assess it in the names of such persons. He is not required to pass upon the condition of the title to the interests involved for the purposes of taxation and assessment." (*Tilden v. County of Orange* (1949) 89 Cal.App.2d 586, 588–589 [201 P.2d 86]; see also *RCA Photophone Inc. v. Huffman, supra*, 5 Cal.App.2d at p. 407 ["the term 'owner' may include others than the possessor of the legal title to property and is often used to designate persons in legal possession. From this premise and the fact that it would have been a futile act on the part of the legislature to empower the assessor to assess personal property to its lawful possessor and provide no efficiently workable means of collecting the tax computed on such assessment after it was legally made, we are of the opinion that when the legislature used the word 'owned' . . . it had in mind its broader definition and intended to give the assessor the power of seizure and sale of personal property lawfully assessed . . ."].)

---

[6] It is undisputed that each of the Respondents owns some fractional shares in various planes. Respondents may use these shares for their own programs, making the aircraft available to nonfractional owners, or lease them to third party charter providers. Respondents may also use these shares for their own benefit, for example, to train their pilots. The Assessors do not base their claim that Respondents can be directly assessed on Respondents' ownership of some fractional shares. Respondents, for their part, do not seem to dispute that, assuming the tax on the fractionally owned aircraft is lawful, they would be liable for some portion of the tax assessment attributable to their share of the ownership of an aircraft.

"Because it would be an intolerable burden otherwise to consider each contract, fixing the relationships of lessor-lessee [citations], the assessor may assess one in possession or control of property or the owner. [Citation.]" (*County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 666 [108 Cal.Rptr. 434].)

To say the fractional owners, not Respondents, own legal title to the aircraft does not answer the question whether Respondents "own" the aircraft for purposes of assessment under the Legislation, much less whether they possess or control the aircraft. The facts before us establish that Respondents control the fractionally owned aircraft within the meaning of the Legislation. As in *Flight Options, supra*, 259 P.3d 234, even if Respondents do not "own" the aircraft, they certainly "control" the aircraft within the meaning of sections 405, subdivision (a) and 1161, subdivision (a).

## C.

### *Section 611*

■ Section 611, which the trial court cited in its statement of decision, is inapplicable. That section reads, in part: "If the name of an absent owner is known to the assessor . . . , the property shall be assessed to such owner; otherwise, the property shall be assessed to unknown owners." (§ 611.) This statute does not prevent the Legislature from assessing personal property taxes against someone other than the person or entity holding recorded title to the property, however. "Record title is, of course, neither conclusive evidence of legal title nor a synonym for ownership. For assessment purposes, it is merely a guide; in the absence of contrary conclusive information it justifies assessment to the record owner." (*Cochran v. Board of Supervisors* (1978) 85 Cal.App.3d 75, 83 [149 Cal.Rptr. 304], citing § 611.)

## D.

### *Bailee Argument*

■ Respondents' argument that they were improperly assessed taxes as bailees is simply incorrect. A true bailee may not be personally assessed for taxes on personal property he or she possesses. (*Weyse v. Crawford* (1890) 85 Cal. 196, 201–202 [24 P. 735].) As explained *ante*, however, Respondents are not bailees who simply have possession of the fractionally owned aircraft for the benefit of the fractional owners. Respondents' possession and control over the fractionally owned aircraft is much more significant.[7]

---

[7] In the trial court, Respondents relied on an Attorney General opinion for the proposition that they could not be assessed directly for the taxes on the fractionally owned aircraft. To the extent the Attorney General's opinion on which Respondents relied is even applicable, it

E.

*Operational Control as Defined by Federal Regulations*

■ Bombardier's separate argument that it is not in control of the fractionally owned aircraft fleet, by reference to FAA regulations, is not persuasive. Bombardier cites 14 Code of Federal Regulations part 91.1009 (2012), which describes the circumstances under which a fractional owner is or is not in operational control of a fractionally owned aircraft. The regulation, and the FAA's official comments on it, establish the purpose of the regulation is to make clear who has ultimate responsibility for the safe operation of the aircraft during a particular flight, and to show that a fractional owner cannot simply defer all responsibility to the fleet manager. (See 14 C.F.R. § 91.1011(a) (2012); 68 Fed.Reg. 54520, 54531, 54538 (Sept. 17, 2003).) They do not disprove Bombardier's control of the fractionally owned aircraft fleet for tax assessment purposes.

III.

ADDITIONAL SUBSTANTIVE ARGUMENTS REGARDING CONSTITUTIONALITY
AND LAWFULNESS OF THE LEGISLATION'S ASSESSMENT OF TAXES ON
FRACTIONALLY OWNED AIRCRAFT

The trial court's order declaring the Legislation unconstitutional and otherwise unlawful was based on two of Respondents' arguments—that the Legislation unlawfully assessed the tax against Respondents as managers of the fractionally owned aircraft fleets, addressed *ante*, and that the tax imposed was a wholly new tax that could not be imposed retroactively, which we will

---

supports our conclusion, rather than that of the trial court. The issue addressed by the opinion was whether a hospital, which was exempt from taxation pursuant to section 214, was liable for property taxes on equipment leased from a national banking corporation. (61 Ops.Cal.Atty.Gen. 472 (1978).) Respondents cite this opinion for two general propositions of law, neither of which we take exception to. However, when quoted in full, the Attorney General's opinion is not supportive of Respondents' argument. "Two general principles in the field of California property taxation are that all *property, unless otherwise exempt, is taxable* [citations] and that property is taxable to its 'true owner.' [Citations.]" (*Id.* at p. 473, italics added.) Respondents only rely on the second portion of this quotation to support their theory that only the fractional owners could be liable for the taxes imposed on Respondents. "The California courts have reasonably construed section 405 and its predecessors by narrowing its seemingly broad language. [Citations.] The statute has never been used to collect from the possessor or lessee of personal property that which could not be legally collected from the true owner or lessor because of an exemption from tax; rather *it has been utilized to facilitate collection where the true owner was liable for the tax but unknown or inaccessible as a practical matter.* [Citations.]" (*Id.* at p. 475, italics added.) This case does not present an issue of a tax that could not lawfully be assessed against the owner or lessor of property, being assessed instead against the property's possessor or lessee.

address *post*. The trial court did not reach other issues raised by Respondents; we nevertheless address those arguments, which Respondents continue to make on appeal, because the trial court's judgment must be affirmed if it was correct upon any theory of law applicable to the case. (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070].)

## A.

### Do the Fractionally Owned Aircraft Have a Sufficient Connection with California to Justify the Imposition of Taxes on Them?

Respondents argue that the Legislation unconstitutionally assesses taxes on property lacking a sufficient connection to the State of California.

"The taxation of property not located in the taxing State is constitutionally invalid, both because it imposes an illegitimate restraint on interstate commerce and because it denies to the taxpayer the process that is his due." (*Norfolk & W. R. Co. v. Tax Comm'n* (1968) 390 U.S. 317, 325 [19 L.Ed.2d 1201, 88 S.Ct. 995].)

However, a state may properly tax property habitually employed in the state, even though the employment within the state is not regular in terms of routes and numbers. (*American Refrigerator Transit Co. v. Hall* (1899) 174 U.S. 70, 82 [43 L.Ed. 899, 19 S.Ct. 599] (*American Refrigerator*); *Pullman's Car Co. v. Pennsylvania* (1891) 141 U.S. 18, 29 [35 L.Ed. 613, 11 S.Ct. 876]; *Marye v. Balt. and Ohio Railroad* (1888) 127 U.S. 117, 123–124 [32 L.Ed. 94, 8 S.Ct. 1037]; *Sea-Land Service, Inc. v. County of Alameda* (1974) 12 Cal.3d 772, 778 [117 Cal.Rptr. 448, 528 P.2d 56].) To comport with both the due process clause and the commerce clause, a state's tax on property domiciled elsewhere must meet the following criteria: (1) the tax is applied to an activity with a substantial nexus with the taxing state; (2) the tax is fairly apportioned; (3) the tax does not discriminate against interstate commerce; and (4) the tax is fairly related to services provided by the state. (*Complete Auto Transit, Inc. v. Brady* (1977) 430 U.S. 274, 279 [51 L.Ed.2d 326, 97 S.Ct. 1076] [test to determine whether state's property tax satisfied commerce clause]; see *Quill Corp. v. North Dakota* (1992) 504 U.S. 298, 313 & fn. 7 [119 L.Ed.2d 91, 112 S.Ct. 1904] [tax that passes constitutional muster under *Complete Auto Transit, Inc. v. Brady* test is also valid under due process clause].) The tax assessment imposed by the Legislation meets each of these criteria.

We find the Washington Supreme Court's opinion in *Flight Options, supra*, 259 P.3d 234, to be persuasive. That opinion interpreted the taxing authority's

ability to tax one of Respondents in this case, based on the very same activity we are considering here; it is not, however, binding authority. (See *Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 571 [120 Cal.Rptr.3d 541, 246 P.3d 621].) NetJets argues the *Flight Options* opinion is not on point because it did not address whether aggregation is permissible when the aircraft are individually owned and controlled. As explained, *ante*, we have concluded that Respondents, as the aircraft fleet managers, were properly assessed the taxes imposed by the Legislation. Further, the *Flight Options* opinion did address issues regarding the ownership structure of the fractionally owned aircraft fleet.

In applying the *Complete Auto Transit, Inc. v. Brady* test, we conclude, first, the aircraft in the fleets managed by Respondents have a substantial nexus with California. "[I]f the nondomiciliary owner habitually employs movable property in the jurisdiction for all or a greater part of the tax year, the property acquires a tax situs although any one item of the property mix may be present for only a short predetermined period." (*Ice Capades, Inc. v. County of Los Angeles* (1976) 56 Cal.App.3d 745, 754 [128 Cal.Rptr. 717].) In *Braniff Airways v. Nebraska Board* (1954) 347 U.S. 590, 600–601 [98 L.Ed. 967, 74 S.Ct. 757], the United States Supreme Court determined the fleet of the aircraft company, which was domiciled in Oklahoma, was subject to taxation in Nebraska based on 18 landings per day, because the fleet had "the opportunity to exploit the commerce, traffic, and trade that originates in or reaches Nebraska."

In both the trial court and on appeal, data was filed by Respondents, under seal, showing their annual arrivals and departures in California and world-wide, before and after the enactment of the Legislation. When averaged over the total number of years for which data was provided, no Respondent had fewer than 13 arrivals and departures in California each day, and the average was as high as 181 per day. These arrivals and departures represented between 5 and 13 percent of Respondents' worldwide arrivals and departures. This showing easily meets the substantial nexus requirement. (See *Flight Options, supra*, 259 P.3d at p. 240 [average of two daily visits to Wn. by fractionally owned aircraft managed by Respondent Flight Options was "more than adequate" nexus under due process clause].)

Second, the tax is fairly apportioned. The Legislation assesses a property tax on a manager in control of a fractionally owned aircraft fleet, based on the percentage of the fleet's arrivals and departures in California as compared to the fleet's arrivals and departures worldwide. The same percentage of the overall value of the fleet is assessed as the property tax. The standard by which to evaluate this apportionment formula was set long ago by the United States Supreme Court, as follows: ". . . States have wide

latitude in the selection of apportionment formulas and . . . a formula-produced assessment will only be disturbed when the taxpayer has proved by 'clear and cogent evidence' that the income attributed to the State is in fact 'out of all appropriate proportions to the business transacted . . . in that State,' [citation], or has 'led to a grossly distorted result,' [citation]." (*Moorman Mfg. Co. v. Bair* (1978) 437 U.S. 267, 274 [57 L.Ed.2d 197, 98 S.Ct. 2340]; see *Auerbach v. Los Angeles County Assessment Appeals Bd. No. 2* (2008) 167 Cal.App.4th 1415, 1425 [85 Cal.Rptr.3d 118].) Respondents claim the formula established by the Legislature is unconstitutional because it does not account for the time their aircraft are actually on the ground within California. We conclude the formula based on Respondents' arrivals and departures is reasonable and rational; Respondents have failed to meet their burden of proving by clear and cogent evidence that it is not.

Third, the tax on fractionally owned aircraft does not discriminate against interstate commerce; none of the Respondents made this argument.

Fourth and finally, the tax on fractionally owned aircraft is fairly related to services provided by California to Respondents. When Respondents' aircraft land at airports in California, they benefit from local services, including, but not limited to, police and fire protection. (*Complete Auto Transit, Inc. v. Brady, supra*, 430 U.S. at p. 277; *Auerbach v. Los Angeles County Assessment Appeals Bd. No. 2, supra*, 167 Cal.App.4th at p. 1426 [evidence of presence of three airplanes in California "supports a rational inference that [airplane company] was afforded substantial opportunities, benefits, and protections by California"].) As the Washington Supreme Court recently held, in considering a due process challenge to Washington's imposition of an apportioned property tax on fractionally owned aircraft managed by Respondent Flight Options: "We turn next to whether ' "the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State." ' [Citation.] The fact that the tax is apportioned so as to limit its assessment to a proportion of the value of the property commensurate with the proportion of time the property spent in Washington goes a long way toward meeting this requirement. [Citation.] While in Washington, Flight Options planes 'enjoyed the benefits and protection of [Washington] criminal laws, the provision of search and rescue services if needed and opportunities for further commerce through contacts with [Washington].' [Citation.] We have little difficulty determining that the apportioned property tax imposed on the Flight Options planes is reasonably related to the opportunities, benefits, and protections afforded by the state." (*Flight Options, supra*, 259 P.3d at pp. 240–241.) Additionally, Respondents' landings and takeoffs result in increases in noise, air pollution, air traffic, and the imposition of other burdens caused by Respondents' use of California airspace. (*Zantop Air Transport, Inc. v. County of San Bernardino* (1966) 246 Cal.App.2d 433, 440–441 [54 Cal.Rptr. 813].)

■ We hold a prospective tax assessment on fractionally owned aircraft established by the Legislation is constitutional under both the commerce clause and the due process clause.

## B.

### *Situs*

■ Respondents also challenged the Legislation on the ground that the property on which it imposes a personal property tax lacks situs in the State of California. "[T]he right to assess and tax property in this State does not depend on the residence of the owner. It depends wholly upon the *situs* of the property." (*San Francisco v. Talbot* (1883) 63 Cal. 485, 489.) Property simply passing through this state may not be taxed. (*Id.* at p. 488.)

Respondents note that prior to the Legislation's enactment, aircraft could establish situs in California by means of two separate statutory schemes: as general aviation aircraft, or as certificated aircraft (meaning commercial airlines). Because the Legislation creates a new definition of situs for purposes of taxation of fractionally owned aircraft, Respondents contend it is unconstitutional.

■ The system by which the Legislation allocates taxes on the fractionally owned fleets fairly distributes the tax burden among all the fractional owners of all the fractionally owned aircraft. (*Moorman Mfg. Co. v. Bair,* *supra,* 437 U.S. at p. 274; see *Auerbach v. Los Angeles County Assessment* *Appeals Bd. No. 2, supra,* 167 Cal.App.4th at p. 1425.) Indeed, an allocation system similar to that contained in the Legislation was approved by the United States Supreme Court in *Pullman's Car Co. v. Pennsylvania, supra,* 141 U.S. at page 26, in which the court approved a taxation system that compared the number of miles over which the company ran its railroad cars in Pennsylvania to the total number of miles over which the company ran its railroad cars throughout the country.

The California Legislature properly determined that an entire fractionally owned fleet of aircraft had situs within California based on one landing of an aircraft in the state. (§ 1161, subd. (b).) As noted, *ante,* each fleet of fractionally owned aircraft managed by one of the Respondents had many landings during each year for which data had been provided. In *American* *Refrigerator, supra,* 174 U.S. at pages 81–82, the United States Supreme Court held the owner of refrigerated railroad cars, used by multiple carriers to, from, and within Colorado, could be taxed by the State of Colorado, based on an average number of cars within the state during the taxing period. Respondents argue *American Refrigerator* is distinguishable, because the

refrigerated railroad cars were all owned by a single entity, while here each aircraft has multiple fractional owners. We see no reason to distinguish this case on that basis. It is the location of the property, not the owner, that determines whether property tax may be levied. As explained, *ante*, the Legislation properly identifies Respondents as the taxpayers; even if there were some significance to the fractional ownership of the aircraft, the unitary control of the fleet by Respondents would place this case squarely within the reach of *American Refrigerator*'s holding. In upholding the imposition of a Washington state tax against the manager of a fractionally owned aircraft fleet (one of the Respondents herein), the Washington Supreme Court cited *American Refrigerator* with approval. (See *Flight Options, supra*, 259 P.3d at pp. 239–240.)

Respondents also argue that each owner's property must be assessed separately from the other owners' property. There are two problems with this argument. First, Respondents' argument relies on authority that holds a taxpayer's property must be evaluated separately from other taxpayers' property to determine situs. (*Union Tank Line Co. v. Wright* (1919) 249 U.S. 275, 282 [63 L.Ed. 602, 39 S.Ct. 276].) Here, the new statutory scheme sets up as single taxpayer—each of the Respondents—so the *Union Tank Line Co. v. Wright* case does not apply. Second, if that argument applied, Respondents' argument would mean that the fractionally owned aircraft could never be assessed taxes in California although the aircraft's situs is in California.

## C.

### *Whether There Are Fractionally Owned Aircraft Registered with the FAA to Be Taxed*

 Section 1160, subdivision (a)(4) defines " '[f]ractionally owned aircraft' " and " 'aircraft operated in fractional ownership programs' " as "those aircraft registered with the Federal Aviation Administration as fractionally owned aircraft." Respondents concede that the fractionally owned aircraft in their fleet programs are registered with the FAA, but argue that because they are not registered as fractionally owned aircraft under a separate designation, the Legislation does not apply to any aircraft at all.

The fractionally owned aircraft the Legislation sought to reach are registered with the FAA. The Assessors identified two official FAA records—the FAA's registry database and the FAA's aircraft registration master file—that are publicly available, and on which aircraft are registered as fractionally owned. Respondents contend that because these online records are not archived, they are not permanent records. Further, they contend that because the Legislation was intended to apply retroactively, the inability to use the

FAA records to determine past due taxes means that these FAA records are not the registers required by section 1160, subdivision (a)(4). This argument does not withstand analysis. Given the allocation system of tax assessment created by the Legislation, there would be no need for the Assessors to use any FAA records to validate which aircraft were fractionally owned, meaning that no such need was behind the definition in section 1160, subdivision (a)(4). For this reason, the additional argument by Respondents that the Assessors do not use the FAA's online databases is also irrelevant.

The Assessors also noted that Respondents, in applying for FAA approval as managers of fractional ownership programs, were required to register the aircraft within their fractional ownership programs, pursuant to 14 Code of Federal Regulations part 91.1015(a)(1) & (b) (2012). Respondents correctly note that neither the online databases nor the registration by Respondents is the same as the official status regarding an aircraft contained in the aircraft's FAA registration file. But that is not what section 1160, subdivision (a)(4) requires. Both of those resources identify the aircraft in question as registered with the FAA, and further identify their status as fractionally owned aircraft. Nothing more is required. Respondents' argument that the Legislation is ineffective for defining a null set of aircraft is not persuasive.

 In any event, "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." (*Bruce v. Gregory* (1967) 65 Cal.2d 666, 673 [56 Cal.Rptr. 265, 423 P.2d 193].) If Respondents' argument were correct, the Assessors would be barred from collecting any taxes on the fractionally owned aircraft—an absurd consequence which the Legislature clearly did not intend when it enacted legislation for the specific purpose of assessing taxes against the managers of fleets of fractionally owned aircraft.

## IV.

### RETROACTIVITY

The trial court concluded the Legislation imposes a new tax, rather than clarifying an existing law regarding taxation of fractionally owned aircraft, and that, as a new tax, its retroactive application violated due process. We hold that the Legislation constitutes a new law regarding the assessment of taxes against the managers in control of fractionally owned aircraft fleets and, therefore, cannot constitutionally be applied retroactively.

## A.

### *Does the Legislation Create a New Assessment of Taxes?*

 "[A] statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment. We assume the Legislature amends a statute for a purpose, but that purpose need not necessarily be to change the law. [Citation.] Our consideration of the surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning. [Citations.] Such a legislative act has no retrospective effect because the true meaning of the statute remains the same. [Citations.]" (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) The legislative history of the Legislation is persuasive, but not binding, on our determination whether the Legislature enacted a new law or merely clarified an existing law. (*Id.* at p. 244.)

Before the Legislation's enactment, taxes were not assessed against any party for fractionally owned aircraft. In 2006, the aircraft advisory subcommittee of the California Assessors' Association proposed the need to "[d]evelop special legislation and an accompanying Property Tax Rule along with an assessment methodology to assess fractionally owned aircraft with a presence intra and/or interstate in California." The subcommittee's report explained the problem as follows: "These aircraft operate similar to on-demand air charters but have not established a habitual location within the state. However, they have established a physical presence similar to, or greater than, that of certificated commercial air carriers such as American Airlines, United Airlines, Southwest Airlines, and other members of the Airline Transportation Association. [¶] California based air charter services and certificated air carriers that operate inter and/or intrastate are currently assessed pursuant to the appropriate R[evenue] & T[axation] Code Sections. These carriers have lost a high percentage of their business travelers to the *fractional aircraft operators* who, due to being such a hybrid, *have managed to avoid taxation. Therefore special legislation is required in order for these fractionally owned aircraft to be assessed based upon their allocated operations within the state.*" (Italics added.)

The legislative history also supports the conclusion that assessment of taxes on fractionally owned aircraft was the result of a new law: "Under existing law, these fleets [of fractionally owned aircraft] are subject to property tax, but assessment requires detailed inspection of flight records to determine the amount of time that each aircraft spends at each airport, and all revenue will go to the county in which each aircraft was present most often. Fractionally-owned fleets are relatively new, and assessment has generally

been deferred by the counties pending approval of the streamlined approach." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 87, as amended July 19, 2007, p. 2.)

The Board's staff legislative bill analysis, prepared before the Legislation was enacted, assumed it was a new law creating assessment rules for fractionally owned aircraft.[8] "Currently, there are no special assessment provisions for fractionally owned aircraft used in Fractional Ownership Programs that are using California airports. The Revenue and Taxation Code contains separate provisions of law related to the taxation of aircraft depending upon one of two types of traditional ownership and use: (1) general aircraft and (2) certificated aircraft. Typically, 'certificated aircraft' are commercial aircraft operated by air carriers for passenger or freight service, while 'general aircraft' are typically privately owned aircraft, such a[s] aircraft kept at a hangar at a local airport. General aircraft are assessed on an aircraft by aircraft basis and an assessment is made only in a single county where the aircraft is habitually situated—even if the aircraft routinely uses other airports in other counties in the state. Certificated aircraft are assessed based on a 'fleet basis' and assessments are made for each county in which the aircraft in the fleet land. [¶] Under current law fractionally owned aircraft that have acquired taxable situs in California would be assessed under the provisions for general aircraft. However, in actual practice, *fractionally owned aircraft are a new form of ownership and these aircraft have not yet been assessed in California.* Essentially, the business model of fractional ownership programs is a hybrid of general and commercial aviation." (Italics added.) The staff legislative bill analysis notes that the administrative procedure for assessing taxes under the Legislation "would be a hybrid of provisions for general aircraft and the simplified centralized system used for certificated aircraft as well as the fleet concept used for certificated aircraft."

The Board's staff legislative bill analysis also provided the following comments regarding the Legislation: "Fractional Aircraft Ownership Programs are an emerging commercial aviation industry that has rapidly expanded in the last 10 years and will likely continue to grow. Existing law requires that the aircraft be taxed using the provisions for general aircraft. But the assessment of these aircraft does not fit well into a body of law set up for traditional forms of aircraft ownership and use. It would be administratively impractical to use these particular sections of law. Furthermore, the revenues would likely be dedicated to one county in California (the one particular

---

[8] "An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts; however, . . . the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

airport most often used) rather than shared among the counties. [¶] . . . This bill would create a new body of law to address these specific types of aircraft. Fractionally owned aircraft are relatively new, and assessment has generally been deferred by the counties pending approval of the streamlined approach that also resolves the administrative difficulties. [¶] . . . [¶] . . . Supporters [of the Legislation] note that fractional ownership programs are currently enjoying a competitive advantage. Both charter operators of aircraft located at airports based in California or that habitually use California airports and aircraft owned by commercial airlines using California airports are subject to property tax. Both of these commercial sectors are losing customers to the fractional ownership programs." (Boldface omitted.)

The Board's designated representative testified at a deposition in this case that the Legislation "was creating a new body of law to assess fractionally owned aircraft." That deponent, in an internal e-mail drafted before the Legislation's enactment, had stated: "I'm confused about the statement that the bill doesn't clarify anything—as in my mind it's creating an entire new body of law to address how, when, where, etc. to tax these beasts. In other words—it's throwing out the provisions for general aircraft which the legal opinion was trying to make fit . . . and it specifically makes a statement about the planes have situs in CA." Another employee of the Board testified that the assessment procedure provided by the Legislation was a hybrid of the general and certificated aircraft models: "So from the inception of the bill forward it would appear that the habitually situated portion of the general aviation section was overridden and they're being treated in some ways like the certificated aircraft, you know, and then in some ways, as far as the value of the aircraft, as general aviation."

During a conference call after the Legislation was enacted, an employee of the Orange County Tax Assessor noted that the Los Angeles County Tax Assessor "is not going to apply penalties" and "feels that penalties should not be applied because they had never received notice that they might be assessable."

■ Having considered the Legislation's language, its legislative history, and the analysis and interpretation of affected agencies and entities before and after its enactment, we hold the Legislation is a new law that creates a new method for assessing taxes on a specific type of personal property— fractionally owned aircraft. Therefore, the assessment of the tax for years prior to the year of enactment constituted a retroactive tax.

## B.

### *Does the Retroactive Application of a New Tax Assessment Violate Due Process?*

We next consider whether the new tax assessment created by the Legislation could apply retroactively. Respondents contend that a "wholly new" tax may never be assessed retroactively, citing *United States v. Carlton* (1994) 512 U.S. 26 [129 L.Ed.2d 22, 114 S.Ct. 2018]. In that case, the Supreme Court held an amendment to a tax statute, "adopted as a curative measure" (*id.* at p. 31), was not a wholly new tax, and that the "modest" period of retroactivity—"only slightly greater than one year"—was not unconstitutional (*id.* at pp. 32–33).

No case cited by any party to this appeal has permitted retroactive application of a newly created assessment. In *Blodgett v. Holden* (1927) 275 U.S. 142, 147 [72 L.Ed. 206, 48 S.Ct. 105], and *Untermyer v. Anderson* (1928) 276 U.S. 440, 445–446 [72 L.Ed. 645, 48 S.Ct. 353], the Supreme Court held the federal gift tax was unconstitutional as to gifts made before its enactment. "As to the gifts which Blodgett made during January, 1924, we think the challenged enactment is arbitrary and for that reason invalid. It seems wholly unreasonable that one who, in entire good faith and without the slightest premonition of such consequence, made absolute disposition of his property by gifts should thereafter be required to pay a charge for so doing." (*Blodgett v. Holden, supra*, at p. 147.)

*River Garden Retirement Home v. Franchise Tax Bd.* (2010) 186 Cal.App.4th 922 [113 Cal.Rptr.3d 62] (*River Garden*), on which the Assessors rely, is distinguishable. That case involved section 24402, which permitted corporate taxpayers in California to deduct a portion of dividends received from other corporations that were subject to taxation in California, but not from corporations that were not subject to taxation in California. (*River Garden, supra*, at pp. 931–932.) River Garden Retirement Home filed tax returns in 1999 and 2000, deducting a portion of the dividends it had received in those years, pursuant to section 24402. (*River Garden, supra*, at p. 933.) In 2003, section 24402 was declared unconstitutional in *Farmers Bros. Co. v. Franchise Tax Bd.* (2003) 108 Cal.App.4th 976, 980, 986–987 [134 Cal.Rptr.2d 390], on the ground it violated the commerce clause of the United States Constitution, because it treated dividends from corporations subject to tax in California differently from those of corporations not subject to tax in California. (*River Garden, supra*, at p. 932.) The Franchise Tax Board announced it would allow section 24402 deductions for the tax years before 1999; it assessed River Garden Retirement Home additional taxes for the deductions claimed in 1999 and 2000. (*River Garden, supra*, at p. 933.)

The court in *River Garden* concluded the retroactivity period for assessing additional taxes, which reached back four years from the issuance of the *Farmers Bros. Co. v. Franchise Tax Bd.* opinion, did not violate due process. (*River Garden, supra,* 186 Cal.App.4th at p. 949.) "[*United States v.*] *Carlton* does call for a modest period of retroactivity, but we do not subscribe to the view that a period longer than one year in and of itself raises serious constitutional questions. Rather, we believe that the modesty of the period must be assessed under the facts and circumstances of the case." (*Id.* at p. 948, fn. omitted.)

*River Garden* addressed the removal of a *deduction,* not the application of a wholly new tax assessment. The other cases the parties have cited for the proposition that a change in the tax law may be applied retroactively address statutory amendments and enactments that change the tax rate (*United States v. Darusmont* (1981) 449 U.S. 292 [66 L.Ed.2d 513, 101 S.Ct. 549]), change the amount of permissible tax exemptions (*United States v. Hemme* (1986) 476 U.S. 558 [90 L.Ed.2d 538, 106 S.Ct. 2071] ), or limit the amount or availability of tax deductions (*United States v. Carlton, supra,* 512 U.S. 26; *Welch v. Henry* (1938) 305 U.S. 134 [83 L.Ed. 87, 59 S.Ct. 121]).

We hold the new tax assessment imposed by the Legislation may not constitutionally be applied retroactively. The trial court did not err in concluding that the purported reach of section 1161 to capture taxes on fractionally owned aircraft beyond the tax year in which the Legislation was enacted is unconstitutional.

The Board, as amicus curiae on behalf of the Assessors, suggests that this court may reform section 1161 to remove the unconstitutional retroactivity provisions, citing *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 660–661 [47 Cal.Rptr.2d 108, 905 P.2d 1248]. No party disputes our ability to do so. The portion of the Legislation containing the retroactivity language is in section 1161, in subparts (1) and (2) of subdivision (a). We hold those two subparts to be unconstitutional.

DISPOSITION

The judgments are reversed. The trial court is directed to enter judgments providing that subparts (1) and (2) of section 1161, subdivision (a) are unconstitutional as a retroactive application of a wholly new tax assessment for time periods before the 2007–2008 fiscal year, and that the remainder of the Legislation (namely, sections 1160, 1161 [other than subparts (1) and (2) of

subd. (a)], 1162, and 5368, and the 2007 amendments to sections 441 and 452) is lawful and constitutional, as against the challenges of Respondents. In the interest of justice, and because all parties prevailed in part on this appeal, no party shall recover costs on appeal..

O'Leary, P. J., and Aronson, J., concurred.

A petition for a rehearing was denied July 18, 2012, and the opinion was modified to read as printed above. The petition of all respondents for review by the Supreme Court was denied October 10, 2012, S204397.