[Civ. No. 47732. First Dist., Div. One. Jan. 18, 1982.]

GEOMETRICS, Plaintiff and Respondent, v.
COUNTY OF SANTA CLARA, Defendant and Appellant.

COUNSEL

Selby Brown, Jr., County Counsel, and Byron D. Athan, Deputy County Counsel, for Defendant and Appellant.

Jonathan Greenfield, Robert T. Russell, Arthur C. Rinsky and Ware, Fletcher & Freidenrich for Plaintiff and Respondent.

OPINION

**GRODIN, J.**—This is an appeal by the County of Santa Clara from a summary judgment ordering the refund of property taxes collected from respondent, GeoMetrics. As refined by stipulation, the sole question on appeal is whether the County may impose an unapportioned ad valorem property tax upon aircraft owned by a corporation domiciled in the county, but located physically in foreign countries and engaged in foreign commerce for all or a portion of the tax year. We hold that such an unapportioned tax is barred by the commerce clause of the federal Constitution, and affirm.

*Factual and Procedural Background*

The facts as stipulated disclose that respondent, a California corporation with its principal place of business in Santa Clara County, provides airborne geophysical surveys to locate subsurface mineral deposits throughout the world. The properties in issue are two aircraft, Navajo I and Navajo II.

Navajo I, acquired in January 1973, was present in the county to early June of 1973. Between June and October, the aircraft was sporadically within the county and other states. However, from October 1973 to October 1977, Navajo I was outside the United States altogether, located for the majority of that time in Zambia and other parts of Africa.

Navajo II, acquired in April 1974, was located in the county on the average of one and one-half months each year. For the remainder of each year, Navajo II was located in other California counties, other states and foreign countries. In 1974 and 1975 it was in Bolivia for two and five months respectively, and in 1976 it was in Paraguay for a short period.

For tax years 1973-1977 the county levied an ad valorem property tax on the full value of the aircraft. No other taxes were demanded by or paid to any other jurisdiction. Respondent paid the taxes under protest and filed for a refund with the board of supervisors, which refund the board denied.

Respondent then filed this action and on summary judgment the court found that both aircraft had a tax situs in the county only on days they were located therein and had a tax situs elsewhere for the remainder of the year. The court ordered the county to apportion the tax accordingly.

Appellant does not contest the apportionment of tax for the time the aircraft were involved in interstate commerce but argues that California has plenary taxing authority over the property for the time it was located in a foreign nation.

*Discussion*

The law relating to the taxation of property in foreign commerce has developed in a somewhat erratic fashion. A convenient starting point for

analysis is *Flying Tiger Line, Inc.* v. *County of L. A.* (1958) 51 Cal.2d 314 [333 P.2d 323], involving aircraft leased or owned by a Delaware corporation with its principal place of business in the County of Los Angeles, and used in an airlift route from the United States to Tokyo, Japan, in support of the war in Korea. The county taxed the leased aircraft on a percentage basis apportioned to the time that the aircraft were physically present in the county, and the tax on these planes was not disputed. (*Id.,* at p. 316.) It taxed the owned aircraft at 100 percent of their value, however, and a majority of the court were of the view that this unapportioned tax violated the commerce and due process clauses of the federal Constitution. Justice McComb, writing for himself and two other justices, relied upon United States Supreme Court decisions upholding taxation by two or more states on an apportioned basis, and precluding unapportioned taxation by the state of domicile. (*Id.,* at p. 318.) Justice Carter concurred in a separate opinion.

Three justices dissented in *Flying Tiger Line, Inc.* Justice Traynor, who wrote the dissenting opinion, reasoned that unlike such property as "river craft [used] almost continuously within other states ... aircraft navigating the sky ordinarily do not acquire any other taxable situs along their course. [Citation.] The domicile is therefore free to tax all such aircraft so long as there is no showing that they have maintained sufficiently regular, recurrent physical and business contacts with other jurisdictions that would accordingly subject them to taxation there. [Citations.]" (51 Cal.2d at pp. 328-329.) The dissenting justices would have remanded the case for redetermination based upon a finding as to whether the aircraft had acquired a taxable situs elsewhere.

Three years later, in *Scandinavian Airlines System, Inc.* v. *County of Los Angeles* (1961) 56 Cal.2d 11 [14 Cal.Rptr. 25, 363 P.2d 25] (hereinafter *SAS*), the court reviewed an attempt by the County of Los Angeles to impose a property tax upon aircraft owned and operated by a foreign airline between three Scandinavian home ports and the United States, the Los Angeles airport being their sole point of contact with the country. Although the tax was apportioned on the basis of the amount of time the aircraft were physically present at the Los Angeles terminus, the court found it unconstitutional.

In arriving at that conclusion, Justice Peters for the majority engaged in an exhaustive historical analysis of the "home-port" doctrine as developed in opinions of the United States Supreme Court, and applied to oceangoing vessels. He observed that the majority in *Flying Tiger Line,*

*Inc.* v. *County of L. A., supra*, 51 Cal.2d 314, had relied exclusively upon cases involving instrumentalities of interstate commerce which did not leave the continental limits of the United States, and for that reason "[t]he case cannot be considered authority for the proposition that airplanes flying only in foreign commerce will be taxed on either the 'home-port' or the apportioned basis." (*SAS, supra*, 56 Cal.2d at p. 30.) "[N]ot every instrumentality of commerce may gain more than a single taxable situs. When such a vehicle becomes an instrument of communication with foreign nations it is apparent that the apportioned basis of taxation is unworkable because the courts of this country can exercise no control over the foreign taxing authorities. The matter then should become an exclusively federal one. . . . [T]he exclusively federal nature of the field requires us to apply the 'home-port' doctrine, and thus to hold that no jurisdiction save that of domicile has any authority to levy a personal property tax on these airplanes." (*Id.*, at pp. 32-33.) That jurisdiction, the court opined, "may impose a tax on the full value, to the exclusion of property taxation elsewhere, whether upon an apportioned basis or otherwise." (*Id.*, at p. 37.)

Justice Dooling joined in the *SAS* opinion, though expressing some doubt as to the vitality of the "home-port" doctrine. (*Id.*, at p. 43.) Justice Traynor, joined by Chief Justice Gibson, dissented in reliance upon *Braniff Airways* v. *Nebraska Board* (1954) 347 U.S. 590 [98 L.Ed. 967, 74 S.Ct. 757], which rejected application of the "home-port" doctrine and upheld an apportioned tax by Nebraska on plaintiff's airplanes, which were domiciled elsewhere but engaged in solely interstate commerce. In Justice Traynor's view "[i]f . . . aircraft cannot logically be distinguished from ships, it is the home-port doctrine, not the Braniff decision, that must give way." (*SAS, supra*, 56 Cal.2d at p. 46.)

In *Sea-Land Service, Inc.* v. *County of Alameda* (1974) 12 Cal.3d 772 [117 Cal.Rptr. 448, 528 P.2d 56], the California Supreme Court, in an opinion by Justice Mosk, unanimously upheld the imposition of an apportioned ad valorem property tax by the County of Alameda upon cargo shipping containers owned and operated by a shipping company with its commercial domicile in New Jersey, and used for transportation of cargo for hire in both interstate and foreign commerce. Observing that "the home-port doctrine, denying nondomiciliary jurisdictions the power to levy property taxes, has been eroded in a series of United States Supreme Court decisions approving apportioned ad valorem property taxes levied by other local jurisdictions having sufficient con-

tacts with vehicles engaged in interstate commerce" (*id.*, at p. 782), the court distinguished *SAS, supra*, 56 Cal.2d 11, on several grounds: that the aircraft were engaged exclusively in foreign commerce, that the aircraft "had only minimum contacts with Los Angeles," and that the opinion relied in part upon an applicable treaty, a consideration not present in *Sea-Land.* (12 Cal.3d at pp. 786-787.) "Therefore," the court concluded, "we are not inhibited by SAS from concluding that the home-port doctrine does not shield the property of a taxpayer from a fairly apportioned ad valorem tax levied by a nondomiciliary jurisdiction with which the taxpayer has sufficient contacts, even if the taxpayer is engaged in foreign commerce or interstate commerce via international waters. The principles of apportioned taxation enunciated in *Pullman* [*Pullman's Car Co.* v. *Pennsylvania* (1891) 141 U.S. 18 (35 L.Ed. 613, 11 S.Ct. 876)], *Ott* [*Ott* v. *Mississippi Barge Line* (1949) 336 U.S. 169 (93 L.Ed. 585, 69 S.Ct. 432)], and *Braniff* [*Braniff Airways* v. *Nebraska Board, supra*, 347 U.S. 590] are to be applied to instrumentalities so engaged." (*Id.*, at p. 786, fn. omitted.) The court viewed its earlier opinion in *Flying Tiger Line, Inc., supra*, 51 Cal.2d 314, as having "implicitly accepted the validity of a properly apportioned tax.... An unapportioned tax was held to be improper because we acknowledged that the rule which permits taxation by two or more states on an apportioned basis precludes taxation of all the property by the state of domicile. [Citation.]" (12 Cal.3d at p. 787.)

In *Japan Line, Ltd.* v. *County of Los Angeles* (1977) 20 Cal.3d 180 [141 Cal.Rptr. 905, 571 P.2d 254], the California Supreme Court applied the analysis in *Sea-Land, supra*, 12 Cal.3d 772, to uphold an apportioned tax on cargo containers which were owned by shipping companies domiciled in Japan, and subject to actual taxation in that country. The court reasoned that "the threat of double taxation from foreign taxing authorities has no role in commerce clause considerations of multiple burdens, since burdens in international commerce are not attributable to discrimination by the taxing state and are matters for international agreement." (20 Cal.3d at p. 185.)

The United States Supreme Court, in an opinion which is highly instructive for resolution of this case, reversed. (*Japan Line, Ltd.* v. *County of Los Angeles* (1979) 441 U.S. 434 [60 L.Ed.2d 336, 99 P.2d 813].) The shipping company asked the high court to reaffirm the "home-port" doctrine as applied to oceangoing vessels, and extend it to containers which were "functionally a part of the ship," so as to preclude taxation by California. This the court declined to do. The court

stated that the doctrine "can claim no unequivocal constitutional source," having its basis, rather, in "common-law jurisdiction to tax," and that: "Given its origins, the doctrine could be said to be 'anachronistic'; given its underpinnings, it may indeed be said to have been 'abandoned.' [Citation]." (*Id.*, at p. 443 [60 L.Ed.2d at p. 344].) Instead, the court adopted a functional mode of analysis, emphasizing the differences between interstate and foreign commerce.

The court began by observing that a tax on property used in *interstate* commerce is valid under the commerce clause if it "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." (*Japan Line, Ltd., supra,* 441 U.S. at pp. 444-445 [60 L.Ed.2d at pp. 345-346].) The court assumed that California's tax met those criteria (*id.*, at p. 445 [60 L.Ed.2d at pp. 345-346]), but held that "[w]hen construing Congress' power to 'regulate Commerce with foreign Nations,' a more extensive constitutional inquiry is required" because of the "enhanced risk of multiple taxation" arising from the inability of this country's authorities to "ensure full apportionment when one of the taxing entities is a foreign sovereign," and because "a state tax on the instrumentalities of foreign commerce may impair federal uniformity in an area where federal uniformity is essential." (*Id.*, at pp. 446-448 [60 L.Ed.2d at pp. 346-348].) Thus, "*[i]n addition* to answering the nexus, apportionment, and nondiscrimination questions posed in *Complete Auto* [*Complete Auto Transit, Inc.* v. *Brady* (1977) 430 U.S. 274 (51 L.Ed.2d 226, 97 S.Ct. 1076)], a court must also inquire, first, whether the tax, *notwithstanding apportionment*, creates a substantial risk of international multiple taxation, and, second, whether the tax prevents the Federal Government from 'speaking with one voice when regulating commercial relations with foreign governments.' If a state tax contravenes either of these precepts, it is unconstitutional under the Commerce Clause." (*Id.*, at p. 451 [60 L.Ed.2d at p. 349], italics added.)

The court then proceeded to review California's tax in light of those additional requirements. It observed, first, that since the containers were owned, based, and registered in Japan, and were used exclusively in international commerce, and remained outside Japan only so long as needed to complete their international missions, "Japan has the right and the power to tax the containers in full"; and second, that California's tax created "more than the *risk* of multiple taxation"; because the containers were, in fact, taxed in Japan, "it produces multiple taxation

in fact." (*Japan Line, Ltd.,* 441 U.S. at p. 452 [60 L.Ed.2d at p. 350], and see fn. 17, reserving judgment as to whether the risk of multiple taxation alone would invalidate a state tax.) Further, in light of the desirability of uniform treatment of containers used exclusively in foreign commerce, as evidenced by a Customs Convention on Containers to which both the United States and Japan were parties, "California's tax prevents this Nation from 'speaking with one voice' in regulating foreign trade." (*Id.,* at p. 452 [60 L.Ed.2d at p. 350].) Thus, the tax, though apportioned, was "inconsistent with Congress' power to 'regulate Commerce with foreign Nations'" and was, "as applied, unconstitutional under the Commerce Clause." (*Id.,* at pp. 453-454 [60 L.Ed.2d at p. 351].)

Here, there is no "multiple taxation in fact," since it is stipulated that the aircraft are not taxed elsewhere. Since GeoMetrics is locally owned and domiciled, the factors which the United States Supreme Court emphasized in *Japan Line, Ltd., supra,* 441 U.S. 434, as creating the risk of foreign taxation are not present, and there is no other evidence of such a risk. Nor has there been brought to our attention any applicable international agreements such as those relied upon in that case or any other evidence that imposition of a tax by California would interfere with requisite uniformity of treatment. Finally, there is no contention that the aircraft lack a "substantial nexus" with California, or that an apportioned tax would discriminate against foreign commerce in any way. There thus appears to be no bar to California's taxation of the aircraft on an apportioned basis.

The county argues that since its tax imposes neither the risk nor the fact of multiple taxation, and since the property taxed is owned and operated by a corporation domiciled in this state, it should be permitted to tax without apportionment. It relies, in support of that argument, upon the following language from the *Japan Line, Ltd.* opinion: "If an instrumentality of commerce is domiciled abroad, the country of domicile may have the right, consistently with the custom of nations, to impose a tax on its full value." (441 U.S. at p. 447 [60 L.Ed.2d at p. 347].) Insisting that this statement implies that the home-port doctrine is not completely dead, the county urges its application here.

A fair reading of *Japan Line, Ltd.* discloses, however, that the home-port doctrine as a principle of constitutional analysis, if not dead, is functionally comatose. Moreover, the objects of the county's taxation in this case are not "instrumentalities of commerce"; they are pieces of

mechanical equipment which, taken to other states or foreign countries, perform services there over substantial periods of time. Thus, whatever the custom of nations might be with respect to aircraft used as interstate or foreign carriers, we are apprised of no custom which would preclude taxation by foreign countries of these aircraft. In any event, the Supreme Court's teaching in *Japan Line, Ltd.* that where foreign commerce is involved the nexus, apportionment, and nondiscrimination requirements of *Complete Auto Transit, Inc.* (1977) 430 U.S. 274 [51 L.Ed.2d 326, 97 S.Ct. 1076], must be met at a minimum, is too explicit to be ignored.

The lesson of *Japan Line, Ltd., supra*, 441 U.S. 434, is entirely compatible with prior holdings of the California Supreme Court, and we are aware of no case in this or any other state which upholds imposition of an unapportioned tax in a similar context.

The judgment is affirmed.

Elkington, Acting P. J., and Ragan, J.,* concurred.

On February 8, 1982, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied March 17, 1982.

---

*Assigned by the Chairperson of the Judicial Council.