Filed 10/10/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| JETSUITE, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF LOS ANGELES, <br><br> Defendant and Respondent. | B279273 <br><br> (Los Angeles County <br> Super. Ct. No. BC559245) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael L. Stern, Judge.  Affirmed.

Ajalat, Polley, Ayoob & Matarese, Richard J. Ayoob, Gregory R. Broege and Sevanna Hartonians for Plaintiff and Appellant.

Mary C. Wickham, County Counsel, Albert Ramseyer, Principal Deputy County Counsel and Richard Girgado, Senior Deputy County Counsel; Lamb & Kawakami, Michael K. Slattery and Shane W. Tseng for Defendant and Respondent.

\* \* \* \* \* \*

Due process prohibits a state from imposing a tax on the full value of personal property if other states also have the right to tax that property, and whether those states have that right turns on whether that property has "situs" in those other states. (*Central R. Co. v. Pennsylvania* (1962) 370 U.S. 607, 611-614 (*Central*); *Flying Tiger Line, Inc. v. County of Los Angeles* (1958) 51 Cal.2d 314, 318 (*Flying Tiger*).) The taxing authority in this case sought to impose property tax on the full value of six jets used to operate an on-demand "air taxi" service. During the pertinent timeframe, one of those jets flew to 309 different airports in 42 different states and six different countries. This case accordingly presents the question: Does the fact that an aircraft touches down in another state, without more, mean that the other state has acquired situs over the aircraft under the traditional due process test for situs, such that California may no longer tax the full value of the aircraft? We conclude that the answer is "no," and affirm the judgment below.

**FACTS AND PROCEDURAL BACKGROUND**

**I.     Facts**

In 2010, plaintiff and appellant JetSuite, Inc. (JetSuite) owned six Embraer Phenom 100 jets. It operated an "unscheduled air taxi" service that offered on-demand flights. JetSuite was incorporated in Delaware, but headquartered in Long Beach, California. Its planes had no permanent hangar space and received any necessary scheduled maintenance at the manufacturer's service facilities in Van Nuys, California and Mesa, Arizona. In 2010, one of the jets flew to 309 airports located in 42 different states and six different countries; JetSuite calculated that this aircraft spent 60.88 percent of its time in California.

In 2011, respondent and defendant County of Los Angeles (County) assessed personal property tax on all six jets at 1 percent of their full value and, in so doing, looked to the jets' activity in calendar year 2010.  No other jurisdiction taxed the jets that year.

## II.    Procedural Background

### A.    *Administrative proceedings*

In December 2011, JetSuite challenged the County's assessment, seeking a tax refund of $89,839 on the ground that the County should not have assessed the tax on the *full* value of the jets because the jets could have been taxed by other states.

The Los Angeles County Assessment Appeals Board (Board) held an evidentiary hearing in November 2013, analyzing the issues for all six jets based on one representative aircraft, and issued a written ruling rejecting JetSuite's challenge in April 2014.  JetSuite argued to the Board that its jets had acquired "tax situs" in other states for two reasons:  (1) Revenue and Taxation Code section 1161, subdivision (b)[1] provides that situs is established in California "if an aircraft . . . makes a landing in the state," and (2) other states conferred "benefits [and] protection" upon JetSuite by providing fire and other protection services at their airports.[2]  The Board rejected both arguments.  The Board ruled that section 1161 by its terms applied only to "fractionally owned aircraft" (and not aircraft with a single

[1]    All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[2]    JetSuite also argued that the County's act violated the federal Tax Equity and Fiscal Responsibility Act of 1982 (26 U.S.C. § 6221 et seq.), but the Board rejected that claim, and JetSuite does not renew the claim on appeal.

3

owner) and that the benefits and protection JetSuite cited were "not shown to be more than those afforded any other transient aircraft that lands at any airport in or outside of California. JetSuite's transitory contact with the cities it flew into," the Board concluded, "was not sufficient to establish a tax situs since the intent was to drop off passengers and to fly elsewhere at the earliest opportunity."

### B.     Lawsuit

In October 2014, JetSuite filed a petition for an administrative writ of mandate seeking to overturn the Board's ruling.

In addition to a full round of briefing, JetSuite asked the trial court to take judicial notice of a ruling of the Utah State Tax Commission finding that Utah had acquired situs over JetSuite's fleet of jets in 2013.  The court submitted the matter for trial on the papers.

In October 2016, the trial court filed a written statement of decision denying JetSuite's writ petition.  The court ruled that JetSuite's evidence did "not establish situs of its aircraft for tax year 2011 outside of California."  The court rejected JetSuite's "proffered statistical evidence" as "sketchy and conclusory"—and hence, insufficient—because that evidence did not show the *duration* of time the jets spent in other states; "[s]imply asserting that some percentage of landings or take-offs occurred in other states by itself does not," the court reasoned, "establish situs for the purposes of apportioning taxes."  The court also observed that no other state had imposed taxes on JetSuite's aircraft that year, and determined that Utah's taxation three years later was irrelevant.

4

Following the entry of judgment, JetSuite filed this timely appeal.

## DISCUSSION

JetSuite contends that the trial court—and the Board before it—erred in rejecting its claim that the County was prohibited from taxing the full value of its jets in tax year 2011, because those jets had acquired tax situs in other states.

JetSuite's lawsuit is before us on a petition for a writ of administrative mandate. (Code Civ. Proc., § 1094.5, subd. (a).) We may issue such a writ only if (1) the administrative agency acted "without, or in excess of, jurisdiction," (2) the petitioner was not accorded a "fair trial," or (3) "there was [a] prejudicial abuse of discretion" because the agency did "not proceed[] in the manner required by law," its "order or decision is not supported by the findings" or its "findings are not supported by the evidence." (*Id.*, § 1094.5, subd. (b).) Except where a fundamental vested right is at issue, a court will review a claim that an administrative agency committed a prejudicial abuse of discretion—the sole basis for JetSuite's petition—for substantial evidence. (*Id.*, § 1094.5, subd. (c); *Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395-396.) Although there is a *fundamental* right "'to pursue a lawful business or occupation,'" "'there is no *vested* right to conduct a business free of reasonable governmental rules and regulations.'" (*Raytheon Co. v. Fair Employment & Housing Com.* (1989) 212 Cal.App.3d 1242, 1251, italics added.) Because taxation is a form of governmental regulation (see *San Francisco v. Liverpool & London & Globe Ins. Co.* (1887) 74 Cal. 113, 123; *Kaufman v. ACS Systems, Inc.* (2003) 110 Cal.App.4th 886, 918-919), our review is confined to examining whether the Board's ruling is supported by substantial

5

evidence, except as to questions of law—including the validity of the method of valuation—which we review de novo. (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 606; *Auerbach v. Los Angeles County Assessment Appeals Bd. No. 2* (2008) 167 Cal.App.4th 1415, 1420.) In undertaking this review, we stand in the shoes of the trial court and review the decision of the administrative agency, not the trial court. (*Auerbach*, at p. 1420.)

## I.     Taxation

### A.     *Taxation generally*

Our state Constitution makes "[a]ll property . . . taxable" (Cal. Const., art. XIII, § 1, subd. (a)), and requires local governments to impose and collect property taxes (*id.*, art. XIII, § 14; *Sea-Land Service, Inc. v. County of Alameda* (1974) 12 Cal.3d 772, 779 (*Sea-Land Service*) [taxation is "mandatory"]). Personal property is to be taxed at its "full value" (Cal. Const., art. XIII, § 1, subd. (b)), and the tax is to equal 1 percent of its fair market value (*id.*, art. XIII A, §§ 1, subd. (a) & 2; §§ 106, 110.5, 135, subd. (a) & 401). Aircraft are taxable as personal property. (§§ 5301 & 5362.)

### B.     *Taxation of movable personal property*

When personal property moves beyond a state's borders, as is the case with river barges, railcars, and aircraft, the question of taxation becomes trickier because the state's power to tax also implicates the federal due process clause, which limits the state's extraterritorial reach. (*Norfolk & W. R. Co. v. Tax Comm'n* (1968) 390 U.S. 317, 325 (*Norfolk*) [noting due process is concerned with a state "'project[ing] [its] taxing power . . . beyond its borders'"]; see generally *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316-317.)

6

At first, the courts took an "all or nothing" approach when defining the due process limits on a state's power to tax personal property that moved beyond its borders. The sine qua non of this approach was the "home port doctrine," which provided that the state where the property's owner was domiciled could tax *all* of the property, and other states or nations could tax *none* of it. (*Hays v. Pac. Mail S.S. Co.* (1855) 58 U.S. 596, 599-600.) These days, however, the home port doctrine is, "if not dead, functionally comatose." (*GeoMetrics v. County of Santa Clara* (1982) 127 Cal.App.3d 940, 947-948; *Japan Line, Ltd. v. County of Los Angeles* (1979) 441 U.S. 434, 442 (*Japan Line*) [doctrine has "fallen into desuetude"].)

Now, due process embodies "a rule of fair apportionment among the States." (*Japan Line*, *supra*, 441 U.S. at p. 442.) Under this rule, a state having situs over personal property may tax *all* of that property unless one or more other states also has situs over that property. (*Central*, *supra*, 370 U.S. at pp. 611-614; *Sea-Land Service*, *supra*, 12 Cal.3d at p. 787; *Flying Tiger*, *supra*, 51 Cal.2d at p. 318.) What matters is not whether the other state actually *has* taxed the property, but instead whether the other state *could* tax the property (because it also has situs over the property). (*Central*, at p. 614; *Scandinavian Airlines System, Inc. v. County of Los Angeles* (1961) 56 Cal.2d 11, 30-32 (*Scandinavian Airlines*).) It is the taxpayer's burden to show situs in other states. (*Central*, at p. 613.)

As this discussion indicates, situs—and, more to the point, the definition of situs—is critical to the fair apportionment rule. A property has situs in a state when it is "habitually employed" or "habitually situated" in that state. (*Norfolk*, *supra*, 390 U.S. at pp. 323-324 ["habitually employed"]; *Central*, *supra*, 370 U.S.

7

at p. 615 [same]; *Sea-Land Service*, *supra*, 12 Cal.3d at p. 780 [same]; *Zantop Air Transport, Inc. v. County of San Bernardino* (1966) 246 Cal.App.2d 433, 437 ["situated" synonymous with situs].)

Whether personal property is habitually employed or habitually situated in a state turns on two considerations: (1) the "[l]ength of time th[e] property is in the [state] and the intent of its presence," and (2) the "nature of the property owner's contact with the [state]." (*Ice Capades, Inc. v. County of Los Angeles* (1976) 56 Cal.App.3d 745, 753-754 (*Ice Capades*); *County of San Diego v. Lafayette Steel Co.* (1985) 164 Cal.App.3d 690, 694 (*Lafayette Steel*).) A state is more likely to acquire situs under the first consideration if the owner intends the property "to remain" in the state "for an indefinite period or for a relatively long time," and less likely to acquire situs when its owner acts "with the intent that [the property] remain [in the state] for a short period and then be moved elsewhere." (*Ice Capades*, at p. 753.) A state is more likely to acquire situs over property under the second consideration if it confers "'opportunities, benefits, or protection.'" (*Id.* at pp. 753-754; *Ott v. Mississippi Barge Line* (1949) 336 U.S. 169, 174; *Braniff Airways v. Nebraska Board* (1954) 347 U.S. 590, 600 (*Braniff Airways*).) The opportunities, benefits, and protection must be "substantial" before situs is established (*Flying Tiger*, *supra*, 51 Cal.2d at p. 319); "the furnishing of benefit and protection, standing alone," is not enough to "confer" situs (*Scandinavian Airlines*, *supra*, 56 Cal.2d at p. 31).

### C.    *Taxation of aircraft in California*

For purposes of personal property taxation, California divides aircraft into four categories: (1) certificated aircraft (that

8

is, federally regulated aircraft that offer commercial transportation) (§ 1150); (2) air taxis (that is, small aircraft operated by a carrier that does not use aircraft above a certain size) (§ 1154, subd. (a)); (3) general aircraft (that is, aircraft privately owned by an individual or entity) (§ 5303); and (4) fractionally owned aircraft (that is, aircraft owned by several individuals or entities who are entitled to use the aircraft in proportion to their ownership interest, somewhat like a time share) (§ 1160 et seq.).  California law further divides air taxis into two subcategories:  (1) air taxis that operate in scheduled flight service, which are assessed in the same manner as certificated aircraft (§ 1154, subd. (b)); and (2) air taxis that operate on an on-demand, unscheduled basis, which are assessed in the same manner as general aircraft (§ 1154, subd. (c)).

For nearly all of these categories and subcategories of aircraft, California has adopted the due process-based definition of situs—either expressly or by failing to define a different definition.  (See § 1155 [for certificated aircraft, defining situs as states where "the aircraft normally make physical contact with sufficient regularity to entitle such agencies to tax the aircraft under the laws and Constitution of the United States"]; see § 5362 [for general aircraft not operating as air taxis, defining situs as between counties as where "the aircraft is habitually situated"]; § 1154, subd. (c) [for unscheduled air taxis, defining situs as between counties as where "the aircraft is habitually situated"].)[3]  The sole exception is fractionally owned aircraft.  As

_____

[3]     Although these aircraft all use the same definition of situs, they do not all use the same rule for allocating taxes between multiple jurisdictions.  (See §§ 1151 & 1152 [setting up special allocation rule for certificated aircraft and scheduled air taxis].)

9

to these aircraft and these aircraft alone, our Legislature has adopted a special situs rule:  Situs is established over "[a] fleet of fractionally owned aircraft . . . if an[y] aircraft within the fleet makes a landing in the state."  (§ 1161, subd. (b).)

## II.    Analysis

Under this law, whether the County has acted properly in taxing the full value of JetSuite's jets turns on whether there is substantial evidence to support the Board's finding that JetSuite failed to prove that any other state acquired situs over those jets in 2010.  We conclude substantial evidence supports the Board's ruling.

Situs, as noted above, turns on (1) the length of time the property is in another state as well as whether the property was intended to be there indefinitely or temporarily, and (2) the "'opportunities, benefits, or protection'" the other state has afforded the property.  (*Ice Capades*, *supra,* 56 Cal.App.3d at pp. 753-754; *Lafayette Steel*, *supra,* 164 Cal.App.3d at p. 694.)  JetSuite calculated that the representative jet analyzed at the hearing spent 60.88 percent of its time in 2010 in California.  But JetSuite never established that the time the aircraft spent in each state outside of California was more than the sum of incidental touch downs in that state and never showed the benefits and protection any particular state conferred upon those jets.  Further, JetSuite's jets were "just passing through" the states where they landed; JetSuite's intent was, as the Board put it, "to drop off passengers and to fly elsewhere at the earliest opportunity."  In short, JetSuite did not prove situs in any other specific state.  In the absence of such proof, "it is surely

_____

These differences in allocation are not relevant to this appeal, which deals solely with the threshold question of situs.

10

appropriate to presume that the domicile [state]"—here, California—"is the only [state] affording the 'opportunities, benefits, or protection' which due process demands as a prerequisite for taxation." (*Central*, *supra*, 370 U.S. at p. 612.)

JetSuite raises three arguments in response.

First, JetSuite argues that its evidentiary showing was sufficient. Specifically, JetSuite asserts that we must presume that each state and country where its jets landed offered the benefits and protection of fire and other airport services to those jets, and that the provision of these services by itself establishes situs. Although "aircraft land[ing] at airports . . . benefit from local services, including, but not limited to, police and fire protection" (*NetJets Aviation, Inc. v. Guillory* (2012) 207 Cal.App.4th 26, 50 (*NetJets*)), the provision of those services does not automatically confer situs. The states hosting a traveling ice skating show in *Ice Capades* ostensibly offered police and fire protection during the show's multi-week stay in these states, but this was "not sufficient to establish a tax situs." (*Ice Capades*, *supra*, 56 Cal.App.3d at p. 754.) Other cases finding that a state has situs over aircraft have rested upon evidence showing regular and frequent contact between the aircraft and that specific state. (*Braniff Airways*, *supra*, 347 U.S. at pp. 600-601 [aircraft had 18 stops per day, and earned 10 percent of its revenue, in Nebraska]; *NetJets*, at p. 49 [aircraft had between 13 and 181 arrivals per day, and did five to 13 percent of its business, in California].) Similar quanta of state-specific evidence are missing here.

Second, JetSuite alternatively contends that any specific deficiency in its evidentiary showing is irrelevant because section 1161, subdivision (b) provides that situs is established once a

11

single "aircraft . . . makes a landing in the state," such that their jets' landings in other states establishes situs in those states.

We reject JetSuite's argument because the "single landing" situs rule created by section 1161, subdivision (b) applies, by its plain language, only to fractionally owned aircraft, and JetSuite concedes that its jets are not fractionally owned. Our Legislature knows how to create a special definition of situs (as it did for fractionally owned aircraft); its decision not to do so for other categories of aircraft must be given effect. (See, e.g., *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 257-258 [noting this maxim].)

JetSuite nevertheless offers two reasons why the section 1161, subdivision (b) situs rule for fractionally owned aircraft must be extended to reach *all* aircraft. To begin, JetSuite asserts that the form of ownership should not dictate situs. Because our Legislature has taken a different view and allowed the default due process-based definition of situs to remain in force for all non-fractionally owned aircraft (§§ 1154, subd. (c), 1155 & 5362), JetSuite is at bottom arguing that our Legislature committed an error of constitutional dimension in adopting a specialized definition of situs just for fractionally owned aircraft. This is an equal protection argument, and one that lacks merit given our Legislature's "suprem[acy] in the field of taxation" (*Delaney v. Lowery* (1944) 25 Cal.2d 561, 568) and its power to "permissibly distinguish in favor of a given class" (*Haman v. County of Humboldt* (1973) 8 Cal.3d 922, 925; *Sea-Land Service, supra*, 12 Cal.3d at p. 780 ["equal protection . . . imposes no invariable rule of total equality in the exercise of the state's taxing power"]; accord, *NetJets, supra*, 207 Cal.App.4th at p. 51 [noting that Legislature can "create[] a new definition of situs for

12

purposes of taxation" for different categories of aircraft—in that case, fractionally owned aircraft].)

Further, JetSuite urges that the "internal consistency" doctrine mandates the extension of section 1161, subdivision (b)'s situs rule to all aircraft in order for all aircraft to be treated consistently.  However, this argument misapprehends the doctrine.  The internal consistency doctrine is used to measure whether a jurisdiction's tax laws impermissibly discriminate against commerce from other jurisdictions in violation of the dormant commerce clause.  (*Armco Inc. v. Hardesty* (1984) 467 U.S. 638, 644-645; *Container Corp. v. Franchise Tax Bd.* (1983) 463 U.S. 159, 169-170; *General Motors Corp. v. City of Los Angeles* (1995) 35 Cal.App.4th 1736, 1741-1742, 1749-1750.) Situs is a function of due process, not the dormant commerce clause.  Because "the Due Process Clause and the Commerce Clause reflect different constitutional concerns" and rest on "analytically distinct" considerations (*Quill Corp. v. North Dakota* (1992) 504 U.S. 298, 305; *MeadWestvaco Corp. v. Illinois Dept. of Revenue* (2008) 553 U.S. 16, 24 [noting that the two clauses "impose distinct but parallel limitations on a State's power to tax out-of-state activities"]), a test from one cannot be imported willy nilly to the other.

More broadly, were we to accept JetSuite's argument, we would be converting our Legislature's statutorily created single landing rule for fractionally owned aircraft into a constitutionally mandated rule for *all* aircraft, thereby displacing the well-settled due process-based rules for assessing situs and in the process declaring that 42 other states and six other countries have situs of JetSuite's jets.  We will not bless this absurd result.

13

Lastly, JetSuite argues that Utah's taxation of its aircraft in 2013 dictates a finding that Utah had situs over its jets in 2010.  We disagree.  The "representative period" for the taxes at issue in this case was 2010.  (§ 1153; *County of Alameda v. State Bd. of Equalization* (1982) 131 Cal.App.3d 374, 380 [representative period may be the prior calendar year].)  Nothing in the record indicates that JetSuite's activities in 2013 have any relevance—let alone any retroactively binding effect—on what its activities were, or where they might have established situs, in 2010.  Indeed, JetSuite's fleet operations had changed drastically between 2010 and 2013; by 2013, JetSuite's fleet had grown from six jets to 21.  The 2013 evidence was entitled to no weight.

## DISPOSITION

The judgment is affirmed.  The County is entitled to its costs on appeal.

### CERTIFIED FOR PUBLICATION.

_____, J.

HOFFSTADT

We concur:

_____, Acting P. J.

ASHMANN-GERST

_____, J.*

GOODMAN

---

\*      Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14