Filed 7/9/24  Windsor Gardens Convalescent Center etc. v. Baass CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| WINDSOR GARDENS CONVALESCENT CENTER OF LOS ANGELES et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MICHELLE BAASS, as Director, etc., et al., <br><br> Defendants and Respondents. | B321874 <br><br> (Los Angeles County Super. Ct. No. 20STCP01436) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Hooper, Lundy & Bookman, Stanton J. Stock, Alicia W. Macklin, Jeffrey Lin and Maydha Vinson for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Charles J. Antonen and Colin D. Schoell, Deputy Attorneys General, for Defendants and Respondents.

_____

Appellants are a chain of skilled nursing facilities that share a home office.[1] Seeking Medi-Cal reimbursement, appellants reported the costs of certain home office employees as labor costs. The California Department of Health Care Services (the Department) audited appellants' cost reports for fiscal years

_____

[1] Appellants are Windsor Gardens Convalescent Hospital or Windsor Gardens Convalescent Hospital of Los Angeles, Windsor Manor Rehabilitation Center of Concord, Windsor Gardens Convalescent and Rehabilitation Center of Golden Hill, Windsor Elmhaven Care Center, Windsor Gardens Convalescent Center of Hawthorne, Windsor Convalescent Center of North Long Beach, Windsor Gardens Convalescent Center of San Diego, Windsor Terrace Healthcare Center, Windsor Gardens Convalescent Center of the Valley, Windsor Gardens of Cheviot Hills, Windsor Palms Care Center of Artesia, Windsor Gardens Care Center of Fullerton, Windsor Gardens Rehabilitation Center of Salinas, Windsor Chico Creek Care and Rehabilitation Center, Windsor El Camino Care Center, Windsor Vallejo Care Center, Windsor Rosewood Care Center, Windsor the Ridge Rehabilitation Center, Windsor Care Center of Sacramento, Windsor Chico Care Center, Windsor Skyline Care Center, Windsor Redding Care Center, Windsor Gardens of Long Beach, Windsor Park Center of Freemont, Windsor Gardens Care Center of Hayward, Windsor Hampton Care Center, Windsor Post-Acute Care Center of Hayward, Windsor Care Center of Petaluma, Windsor Country Drive Care Center, Windsor Monterey Care Center, and Windsor Elk Grove Care and Rehabilitation Center.

2013 and 2014 and reclassified the costs of the home office employees as administrative costs, which are reimbursed at a lower percentile than labor costs. Appellants filed administrative appeals challenging the reclassifications. An administrative law judge (ALJ) denied the consolidated appeals in a decision that the Department adopted as its final decision. Appellants then filed a petition for writ of mandate to order the Department and its director[2] (collectively respondents) to set aside the final decision. The trial court denied the petition and this appeal ensued.

We affirm.

## BACKGROUND

I. *Statutory and Regulatory Context*

    A. <u>Medicaid and Medi-Cal</u>

"Medicaid is a cooperative federal-state program" (*Douglas v. Independent Living Center of Southern California, Inc.* (2012) 565 U.S. 606, 610) that subsidizes the states' provision of medical care to certain families and individuals with insufficient income and resources to meet the costs of necessary medical services (*Armstrong v. Exceptional Child Center, Inc.* (2015) 575 U.S. 320, 323). A state's participation in Medicaid is voluntary, but a state that chooses to participate "must comply with federal requirements and administer its Medicaid program through a plan approved by the federal Centers for Medicare and Medicaid Services . . . . [Citations.]" (*Dignity Health v. Local Initiative*

---

[2]    Appellant's petition for writ of mandate named Bradley P. Gilbert, the Department's director at the time, as a party. We substitute the Department's current director, Michelle Baass, for Gilbert. (See *Bacilio v. City of Los Angeles* (2018) 28 Cal.App.5th 717, 722; *Weadon v. Shahen* (1942) 50 Cal.App.2d 254, 259–260.)

3

*Health Care Authority of Los Angeles County* (2020)
44 Cal.App.5th 144, 152.)

California participates in Medicaid through the Medi-Cal program.  (*Asante v. California Department of Health Care Services* (9th Cir. 2018) 886 F.3d 795, 796.)  The Department is the state agency responsible for administering Medi-Cal in accordance with applicable federal and state laws.  (Cal. Code Regs., tit. 22, § 50004, subds. (a) & (b).)

B.  Medi-Cal reimbursement to skilled nursing facilities

"The Medi-Cal program does not directly provide services; instead, it reimburses participating health care plans and providers for covered services provided to Medi-Cal beneficiaries. [Citation.]" (*Marquez v. State Dept. of Health Care Services* (2015) 240 Cal.App.4th 87, 94.)

In enacting the Medi-Cal Long-Term Care Reimbursement Act (Welf. & Inst. Code, § 14126 et seq.; Reimbursement Act) in 2004, the Legislature intended "to devise a . . . reimbursement methodology that more effectively ensures individual access to appropriate long-term care services, promotes quality resident care, advances decent wages and benefits for nursing home workers, supports provider compliance with all applicable state and federal requirements, and encourages administrative efficiency."  (Welf. & Inst. Code, § 14126.02, subd. (a); see also *Crestwood Behavioral Health, Inc. v. Baass* (2023) 91 Cal.App.5th 1, 11–12 (*Crestwood Behavioral Health*).)

The Reimbursement Act requires the Department to "implement a facility-specific ratesetting system, subject to federal approval and the availability of federal funds, that reflects the costs and staffing levels associated with quality of care for residents in [skilled] nursing facilities . . . ."  (Welf. &

4

Inst. Code, § 14126.02, subd. (b).)[3]  Thus, the Department must "calculate reimbursement rates for facilities participating in the Medi-Cal program based on their actual costs of providing health care services to Medi-Cal beneficiaries.  [Citation.]" (*Crestwood Behavioral Health*, *supra*, 91 Cal.App.5th at p. 11.)

Facility-specific reimbursement rates are based on the projected costs of the following categories:  (1) labor costs; (2) nonlabor indirect care costs; (3) administrative costs; (4) capital costs; and (5) direct passthrough costs.  (Welf. & Inst. Code, § 14126.023, subd. (a)(1)-(5).)  Two of these categories— labor costs and administrative costs—are relevant here.

1. *Labor costs*

Labor costs are comprised of direct care labor costs and indirect care labor costs.  (Welf. & Inst. Code, § 14126.023, subds. (a)(1), (d)(1)-(2).)

Direct care labor costs "include all labor costs related to routine nursing services including all nursing, social services, activities, and other direct care personnel."  (Welf. & Inst. Code, § 14126.023, subd. (d)(1).)  This "means salary, wages and benefits for routine nursing services and any ancillary services included in the Medi-Cal rate including all nursing, social services and activities provided by employees of the facility, as well as direct care salary costs of services provided to the facility by a related entity."  (Cal. Code Regs., tit. 22, § 52000, subd. (h).)

Indirect care labor costs "include all labor costs related to staff supporting the delivery of patient care" such as

---

[3]  "Skilled nursing facilities provide 24-hour skilled nursing and supportive care to patients who require such care on an extended basis.  (Health & Saf. Code, § 1250, subd. (c)(1).)" (*Crestwood Behavioral Health*, *supra*, 91 Cal.App.5th at p. 10.)

5

"housekeeping, laundry and linen, dietary, medical records, inservice education, and plant operations and maintenance." (Welf. & Inst. Code, § 14126.023, subd. (d)(2).)  This means "salary, wages and benefits for housekeeping, laundry and linen, dietary, medical records, in service education, and plant operations and maintenance for employees of the facility, as well as indirect care salary costs of services provided to the facility by a related entity."  (Cal. Code Regs., tit. 22, § 52000, subd. (p).)

For the rate periods at issue in this appeal, reimbursement for both direct care labor costs and indirect care labor costs is limited to the 90th percentile of each facility's respective geographic peer group.[4]  (Welf. & Inst. Code, § 14126.023, subds. (a)(1), (b)(1), (d)(1)-(2).)

2. *Administrative costs*

Administrative costs are, among other things, "the facility's portion of home office costs related to the overall management and administration of the facility, including those of the medical director, general and patient accounting activities, communication systems, data processing activities, patient admissions, governing board activities, public relations, paid liability losses, theft insurance, auto insurance, property insurance, licenses and taxes (other than property and income taxes and facility license fee) . . . ."  (Cal. Code Regs., tit. 22, § 52000, subd. (b).)

Reimbursement for administrative costs is limited to the 50th percentile of each facility's respective geographic peer group. (Welf. & Inst. Code, § 14126.023, subds. (a)(2), (b)(1).)

---

[4]     For rate periods starting on August 1, 2020, or later, reimbursement for labor costs is limited to the 95th percentile. (Welf. & Inst. Code, § 14126.023, subd. (d)(1)-(2).)

C.  Provider records and Medi-Cal audits

Providers seeking reimbursement "must provide adequate cost data" that is "based on their financial and statistical records . . . capable of verification by qualified auditors." (42 C.F.R. § 413.24(a).)  Providers are required to "keep, maintain, and have readily retrievable, such records as are necessary to fully disclose the type and extent of services provided to a Medi-Cal beneficiary."  (Cal. Code Regs., tit. 22, § 51476, subd. (a).)  For institutional providers, like appellants, these records include "[e]mployment records including shifts, schedules and payroll records of employees."  (Cal. Code Regs., tit. 22, § 51476, subd. (b)(2).)  The failure to produce these records to an authorized representative of the Department "may result in sanctions, audit adjustments, or recovery of overpayments[.]" (Cal. Code Regs., tit. 22, § 51476, subd. (g).)

Under both federal and state law, the Department is required to conduct post-payment audits of Medi-Cal providers. (42 C.F.R. §§ 447.45(f)(2), 456.3; Welf. & Inst. Code, § 14170, subd. (a)(1); *RCJ Medical Services, Inc. v. Bontá* (2001) 91 Cal.App.4th 986, 992 (*RCJ Medical Services*).)

II.  *Facts and Procedural History*

A.  Appellants' home office

Appellants are a chain of skilled nursing facilities that share a related home office entity, SNF Management, Inc. (the home office).  The home office provides a variety of support services to the skilled nursing facilities, including accounting, billing, nurse consulting, dietary consulting, and staff development consulting.

7

B.  Audit adjustments

For fiscal years 2013 and 2014, appellants reported the salary and expense costs for certain home office employees as direct care labor costs in their Medi-Cal cost reports for reimbursement rate calculation.  The Department audited the cost reports and reclassified the costs associated with three home office positions—regional clinical director, regional director of staff development, and regional dietary supervisor (the reclassified positions)—from labor costs to administrative costs.  Because administrative costs are reimbursed at a lower percentile than labor costs (Welf. & Inst. Code, § 14126.023, subds. (a)(1)-(2), (b)(1), (d)(1)-(2)), appellants estimate that the reclassifications led to a $700,000 to $900,000 decrease in reimbursement for each fiscal year.

C.  Consolidated formal administrative hearing

After informal appeals were denied, appellants filed formal administrative appeals challenging the reclassifications.  At the parties' request, appellants' separate appeals were consolidated by the ALJ.

During the administrative hearing, appellants presented job descriptions of the reclassified positions and various employee affidavits and live testimony.  The parties stipulated that there would be "an evidentiary presumption that testimony from the sample personnel would be substantially similar to testimony from other home office and facility personnel, who held similar positions, for both fiscal years."

D.  The ALJ's proposed decision and the Department's final decision

Following the hearing, the ALJ denied the appeal, thus sustaining the Department's changes of the reclassified positions

8

from labor to administrative costs.  The Department adopted the ALJ's proposed decision as its final decision on October 30, 2019.

E.  Operative amended petition for writ of mandate

In April 2021, appellants filed the operative verified amended petition for writ of administrative and traditional mandamus (the amended petition) under Code of Civil Procedure sections 1094.5 and 1085, seeking to order respondents to set aside the October 30, 2019, final decision.  The amended petition also sought a declaration under Code of Civil Procedure section 1060 that respondents had acted contrary to law.

F.  Denial of the amended petition

Following a hearing on March 24, 2022, the trial court denied the amended petition.  The court held that California Code of Regulations, title 22, section 52000, subdivision (h) "differentiates between the 'activities provided by employees of the facility' and services provided by a 'related entity' (home office)."  The court denied appellants' request for declaratory relief, concluding that the Department was not enforcing an underground regulation.  Finally, the court found that appellants' failure to provide required documents during the audit supported the Department's prima facie case for reclassification and the ALJ's findings that the reclassified positions were administrative positions subject to the administrative cost category.

G.  Appeal

Appellants filed a timely notice of appeal.

**DISCUSSION**

I.  *Denial of Administrative Mandamus Relief*

A.  Requirements for writ of administrative mandate

A petition for writ of administrative mandate under Code of Civil Procedure section 1094.5 is the proper means for a Medi-Cal

9

provider to challenge a final audit decision. (Welf. & Inst. Code, § 14171, subd. (j); *RCJ Medical Services*, *supra*, 91 Cal.App.4th at p. 1003.)

A writ of administrative mandate may issue "only if (1) the administrative agency acted 'without, or in excess of, jurisdiction,' (2) the petitioner was not accorded a 'fair trial,' or (3) 'there was [a] prejudicial abuse of discretion' because the agency did 'not proceed[] in the manner required by law,' its 'order or decision is not supported by the findings' or its 'findings are not supported by the evidence.' [Citation.]" (*JetSuite, Inc. v. County of Los Angeles* (2017) 16 Cal.App.5th 10, 16 (*JetSuite*).)

B. <u>Standards of review</u>

In administrative appeals of Medi-Cal provider audits, "[t]he Department has the burden of proof of demonstrating, by a preponderance of the evidence, that the audit findings were correctly made." (Cal. Code Regs., tit. 22, § 51037, subd. (i); see also *Family Health Centers of San Diego v. State Dept. of Health Care Services* (2021) 71 Cal.App.5th 88, 95.) "Once the Department has presented such a prima facie case, the burden of proof shifts to the provider to demonstrate, by a preponderance of the evidence, that the provider's position regarding disputed issues is correct." (Cal. Code Regs., tit. 22, § 51037, subd. (i); see also *County of Kern v. State Dept. of Health Care Services* (2009) 180 Cal.App.4th 1504, 1514.)[5]

---

[5] Appellants contend that the burden of proof cannot shift to them because such a requirement would conflict with Government Code section 11504. Appellants are wrong. Government Code section 11504 applies to "[a] hearing to determine whether a right, authority, license, or privilege should be granted, issued, or renewed . . . ." Appellants' administrative

10

Where, as here, no fundamental vested right is involved,[6] the Court of Appeal "reviews the administrative record to determine whether the agency's findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in support of them. [Citation.]" (*Golden Day Schools, Inc. v. Office of Administrative Hearings* (2017) 8 Cal.App.5th 1012, 1020.) "In undertaking this review, we stand in the shoes of the trial court and review the decision of the administrative agency, not the trial court. [Citation.]" (*JetSuite*, *supra*, 16 Cal.App.5th at p. 17.)

We review questions of law, such as the interpretation of statutes and regulations, de novo. (*Department of Industrial Relations v. Occupational Safety & Health Appeals Bd.* (2018) 26 Cal.App.5th 93, 100.) "'Rules governing the interpretation of statutes also apply to interpretation of regulations. [Citation.] "In interpreting regulations, the court seeks to ascertain the

_____

appeal is not such a hearing. California Code of Regulations, title 22, section 51037, subdivision (i), sets forth the burden-shifting framework applicable here.

[6] Whether a right at issue in an administrative mandamus action is fundamental and vested is determined on a case-by-case basis. (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1059–1060.) But, "as a general rule, when a case involves or affects purely economic interests, courts are far less likely to find a right to be of the fundamental vested character. [Citations.]" (*Id.* at pp. 1060–1061; see also *E.W.A.P., Inc. v. City of Los Angeles* (1997) 56 Cal.App.4th 310, 325–326 ["Administrative decisions which result in . . . increasing the cost of doing business[] or reducing profits are considered impacts on economic interests, rather than on fundamental vested rights"].)

11

intent of the agency issuing the regulation by giving effect to the usual meaning of the language used so as to effectuate the purpose of the law, and by avoiding an interpretation which renders any language mere surplusage.'" [Citation.] 'We do not construe a regulation in isolation, but instead read it with reference to the scheme of law of which it is a part, so that the whole may be harmonized and retain effectiveness. [Citation.]' [Citation.]" (*Abney v. State Dept. of Health Care Services* (2024) 99 Cal.App.5th 419, 429–430.)

C. Cost classifications of home office employees

The costs of skilled nursing facility home office employees are generally considered administrative costs for the purpose of Medi-Cal reimbursement. (See Cal. Code Regs., tit. 22, § 52000, subd. (b) [defining administrative costs as "expenses including the facility's portion of home office costs related to the overall management and administration of the facility"].) The costs of some home office employees, however, may be classified as labor costs, but only those salary costs shown to be for direct or indirect care provided to the facility. (Cal. Code Regs., tit. 22, § 52000, subds. (h), (p).)

Welfare and Institutions Code section 14126.023, subdivision (d)(1), broadly defines direct care labor costs as "all labor costs related to routine nursing services including all nursing, social services, activities, and other direct care personnel." California Code of Regulations, title 22, section 52000, subdivision (h), provides a more specific definition, stating that direct care labor costs are "salary, wages and benefits for routine nursing services and any ancillary services included in the Medi-Cal rate including all nursing, social services and activities *provided by employees of the facility*, as

12

well as direct care salary costs of services *provided to the facility by a related entity*." (Italics added.) The plain language of the regulation thus differentiates between services "provided by employees of the facility" and services "provided to the facility by a related entity" such as a home office. (Cal. Code Regs., tit. 22, § 52000, subds. (h).) For facility employees, direct care labor costs include "all nursing, social services and activities"; however, for related entity (home office) employees, direct care labor costs are limited to "direct care" salaries of services provided to the facility. (*Ibid.*)

Similarly, for indirect care labor costs, services provided by employees of the facility are differentiated from services provided by home office employees. (See Cal. Code Regs., tit. 22, § 52000, subd. (p) [defining indirect care labor costs as "salary, wages and benefits for housekeeping, laundry and linen, dietary, medical records, in service education, and plant operations and maintenance *for employees of the facility*, as well as indirect care salary costs of services *provided to the facility by a related entity*" (italics added)].) For home office employees, indirect care labor costs are limited to "indirect care salary costs of services provided to the facility . . . ." (*Ibid.*)

We reject appellants' contention that direct labor costs include *all* nursing costs, regardless of whether the employee works at a facility or the home office and that indirect care labor costs include *all* dietary and in-service education costs. Such an interpretation ignores the plain language of California Code of Regulations, title 22, section 52000, subdivisions (h) and (p), differentiating the costs of facility and home office employees.[7]

---

[7] Appellants fault the trial court for developing a "sui generis" interpretation of the relevant statutes and regulations

13

D. Forfeiture

Preliminarily, we must address whether appellants' evidentiary challenge is proper. In their opening brief, appellants ignore the governing substantial evidence standard of review. In so doing, they have ostensibly forfeited the argument, made only in their reply brief, that the Department's reclassification of costs from labor to administrative is not supported by substantial evidence. (See *People v. Tully* (2012) 54 Cal.4th 952, 1075 ["It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party"]; *Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 598 ["The failure to tailor arguments to the appropriate standard of review and failure to fairly summarize the evidence at trial forfeits [an appellant's] claim that the trial court's findings were not supported by substantial evidence"].)

---

and, in particular, challenge the court's conclusion that direct care salary costs of home office employees referred to in California Code of Regulations, title 22, section 52000, subdivision (h), can only be the salaries of direct caregivers as defined by California Code of Regulations, title 22, section 72038. We, however, are tasked with reviewing questions of law de novo and only review the Department's decision—not the trial court's decision or rationale. (See *Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1261 ["An appellate court in a case not involving a fundamental vested right reviews the agency's decision, rather than the trial court's decision"].) In doing so, we find it unnecessary to address whether direct care salary costs are limited to the salaries of direct caregivers.

14

While our analysis could end here, our review of the administrative record discloses substantial evidence in support of the ALJ's findings.[8]

E. Substantial evidence supports the ALJ's findings

The ALJ found that the Department had made its prima facie case but that appellants failed to demonstrate that the reclassified positions' costs were actually labor costs rather than administrative costs. These findings are supported by substantial evidence.

1. *The Department's prima facie case*

The ALJ made findings that, during the audit, the Department requested documentation from appellants about the home office employees, such as the names of the employees, their payroll records, and allocation schedules. Although appellants were required to keep and maintain such documentation, they did not provide the requested information. The Department made its audit adjustments based on this lack of sufficient documentation. The ALJ agreed that, in the absence of supporting documentation, the reclassifications were correctly made and that the Department had made its prima facie case.

Sufficient legal and evidentiary support exists for these findings. Appellants were required to maintain and produce upon request employment records; the failure to do so subjected them to audit adjustments. (42 C.F.R. § 413.24(a); Cal. Code Regs., tit. 22, § 51476, subds. (a), (b)(2), (g).) Rolando Hernandez (Hernandez), an auditor for the Department, testified that when

---

[8] Although the relevant review is of the Department's final decision, because the Department adopted the ALJ's proposed decision in full, for simplicity we will refer to the ALJ's findings and decision.

15

auditing appellants' cost reports, he requested the names, payroll records, and allocation schedules of home office employees in order to conduct a further review of the salaries of those employees. The pertinent records, however, were not provided during the audit. Thus, according to Hernandez, the Department lacked "sufficient communication to make a determination that" the home office "salaries should be incurred directly in the facilities." Hernandez explained that if the Department had received the names of the home office employees at issue *during* the audit, the auditors could have interviewed them "to see what type of job these employees [we]re doing at those facilities."

In short, the salary costs of home office employees can only be classified as labor costs for reimbursement purposes if the costs are for direct or indirect care services provided to the facilities. (See Cal. Code Regs., tit. 22, § 52000, subds. (h), (p).) Hernandez's testimony constitutes substantial evidence that appellants failed to provide requested documentation regarding the home office employees filling the reclassified positions during the audit, which hampered the auditors' ability to assess whether the home office employees were providing direct or indirect care services to the facilities as opposed to administrative tasks related to the overall management of the facilities. (See *Oak Valley Hospital Dist. v. State Dept. of Health Care Services* (2020) 53 Cal.App.5th 212, 228 ["'A single witness'[s] testimony may be sufficient to satisfy the substantial evidence test' for review of evidence presented at an administrative hearing"].) As a result, the Department satisfied its prima facie burden of showing that the audit reclassifications from labor costs to administrative costs were proper.

### 2. *Appellants failed to meet their burden*

The burden then shifted to appellants to demonstrate, by a preponderance of the evidence, that their "position regarding disputed issues [wa]s correct" (Cal. Code Regs., tit. 22, § 51037, subd. (i))—in other words, that the costs of the reclassified positions should be classified as labor costs for Medi-Cal reimbursement instead of administrative costs. The ALJ impliedly found that appellants had not met their burden and expressly found that the preponderance of the evidence showed that the reclassified positions were "administrative positions properly classified in the administrative cost center."

Substantial evidence supports the ALJ's implied and express findings.

### i. <u>Regional clinical director</u>

The job description for the regional clinical director describes administrative functions related to the overall management of the facilities. The position's essential duties include "[a]ssist[ing] facility management with implementation of appropriate resident care policies and procedures"; "[c]onduct[ing] facility reviews"; "[c]onduct[ing] or assist[ing] with assessment of level of care and mak[ing] recommendations regarding staffing assignments, admissions and training"; "[p]articipat[ing] in [m]anagement meetings"; and "[p]articipat[ing] in performance reviews of [directors of nursing], recommend[ing] discipline or replacement of [directors of nursing] as required." Underscoring the lack of direct care responsibilities, the job description states the regional clinical director "has minimal exposure to blood and body fluids[.]"

Petra Dority (Dority), a regional clinical director, testified that she was not assigned specific patients to care for. When she

17

would visit a facility, she would spend up to an hour accompanying staff on rounds and then attend various meetings. During the rounds, she would randomly pick patient rooms to visit. If she found an issue with a patient, she would address the issue herself or train the accompanying staff. However, she "[r]arely" conducted rounds by herself. Dority participated in management meetings in a "supporting role" as a "teacher." Although she "guide[d] and direct[ed]" the directors of nursing, they did not report to her directly and she did not feel that she had "[a]ny authority" to direct them to take any particular action.

This evidence supports a finding that the tasks performed by the regional clinical director were "related to the overall management and administration of the facility" and, thus, that position's costs were properly classified as administrative. (Cal. Code Regs., tit. 22, § 52000, subd. (b).) It also supports the ALJ's implied finding that appellants did not meet their burden of showing that the costs of the regional clinical director should be classified as labor costs.

ii. <u>Regional director of staff development</u>

The job description for the regional director of staff development explains that the position "[p]rovide[s] necessary educational and learning opportunities to assist facility personnel in gaining knowledge, skills and attitudes necessary to perform their assigned duties safely and effectively."

According to the affidavit of Carol Spencer, a regional director of staff development, she was "involved with mentoring and working with the facility-level directors of staff development[,]" including "train[ing] and orient[ing]" them. During facility visits, she would accompany staff on rounds to "ensure a *facility-level* director of staff development [wa]s

18

conducting meaningful training . . . ." (Italics added.) During training, she might be called to work directly with patients for demonstration purposes. She also provided "oversight of the infection control program."

This constitutes substantial evidence that the tasks performed by the regional director of staff development were "related to the overall management and administration of the facility" and, thus, that position's costs were properly classified as administrative. (Cal. Code Regs., tit. 22, § 52000, subd. (b).) It also supports the ALJ's implied finding that appellants did not meet their burden of showing that the costs of the regional director of staff development should be classified as labor costs.

iii. <u>Regional dietary supervisor</u>

Former regional dietary supervisor Alvaro Galdamez testified that he "was responsible to ensure that the quality of service at each facility that [he] visited was accurate and consistent, [and] that all meals were served nutritiously and accurately."

According to an affidavit from Greg Davis, the regional director of operations, regional dietary supervisors "provide[d] consultation and management services" and "create[d] consistency across facilities by: [A]ssisting with vendors across multiple facilities; reviewing common dietary issues between locations; identifying opportunities where facilities might improve the quality of food, and; dealing with best practices beyond what an individual facility would understand."

This constitutes substantial evidence that the tasks performed by the regional dietary supervisor were "related to the overall management and administration of the facility" and, thus, that position's costs were properly classified as administrative.

19

(Cal. Code Regs., tit. 22, § 52000, subd. (b).) It also supports the ALJ's implied finding that appellants did not meet their burden of showing that the costs of the regional dietary supervisor should be classified as labor costs.

II. *Denial of Traditional Mandamus and Declaratory Relief*

The amended petition also sought traditional mandamus relief under Code of Civil Procedure section 1085 and declaratory relief under Code of Civil Procedure section 1060. On appeal, appellants contend that such relief is warranted and ask that, if we find that the Department's reclassifications were erroneous, we should make "a judicial declaration that nursing, dietary, and in-service education costs, when rendered by home office personnel, are appropriately reimbursed as labor costs." To the extent that it is subsumed by appellants' request for administrative mandamus relief, we affirm the denial of traditional mandamus and declaratory relief for the same reasons outlined above.

In their reply brief, appellants make an "alternative" request, asking us to grant declaratory relief "memorializ[ing] a coherent and reasonable standard" for providers to "follow when determining whether costs should be classified as direct care, indirect care, or administrative costs." Or, as an alternative to that alternative, appellants request that we "remand the matter to [the] Superior Court in order to clarify the lower court's ruling on what standard should control."

We decline these requests. Neither we nor the trial court give advisory opinions. (See *People ex rel. Lynch v. Superior Court* (1970) 1 Cal.3d 910, 912 ["The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court"].)

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT